AMOS WHITEHEAD, plaintiff in error, *vs.* JOHN K. ARLINE AND WIFE *et al.*, defendants in error.

1. Prior to the Act of 1866, a conveyance of land to the wife without any words showing it was intended for her *sole and separate use,* vested the title in her husband, the more especially when the consideration paid therefor was the property of the husband.

2. Although there is error in the charge of the Court to the jury, still, if the verdict is right, under the law and facts of the case, this Court will not disturb it.

Husband and wife.   Married women.   Before Judge STRO- ZIER.   Mitchell Superior Court.   May Term, 1871.

Whitehead's bill made this case:   In June, 1863, he bought of Moses Pullen certain land for $2,800 00, cash, took possession, and still holds it under Pullen's deed.   In January, 1863, Pullen had conveyed this land to Mrs. Arline, who was then in possession, but had not had her deed recorded.   She paid Pullen for it $1,800 00 in Confederate currency; but, by a subsequent agreement between her and Pullen, this trade was annulled.   She delivered her deed to Pullen to be destroyed, and he delivered it to Whitehead with the other muniments of title to this and other lands, which Pullen, at the same time, conveyed to Whitehead. By oversight, this deed to Mrs. Arline was not destroyed, but was recorded with the other muniments of title.   And

persons unknown, combining with Mrs. Arline, an ignorant woman, had procured an action of ejectment to be brought against Whitehead and his tenants, to recover from them the possession of said certain land. The prayer was for injunction. (This deed was in the ordinary form.) The answers were such as is shown by the evidence for the defendants hereinafter. For the complainant, Pullen testified that Arline, husband of Mrs. Arline, about to leave for the army and anxious to have his wife near to Pullen, her physician, that he might take care of her, agreed with Pullen to give him a note for $1,500 00, made in 1861, by one Hicks, for said land, and Pullen agreed to accept it, and Arline requested him to have the deed made to Mrs. Arline. Further, Arline instructed him that, if he sold his contiguous lands, to sell this also, and with the proceeds to buy another place for his wife joining such other place as Pullen might buy for his own home, and to take her with his family. Pullen subsequently conveyed it to her and she moved upon it. When Whitehead proposed to buy the whole, Pullen's and Mrs. Arline's, Pullen told Mrs. Arline of the proposed purchase, she consented and delivered her deed for destruction, to carry out said trade. The sale to Whitehead was perfected, and this deed was delivered up to him for destruction, and Pullen and Mr. Arline gave Whitehead possession. The note was for Mrs. Arline's land, sold to Hicks in March, 1861. Whitehead's brother testified to the deed of Mrs. Arline being delivered up for destruction, and the payment of the $2,800 00 for Pullen and her, and that Pullen said it was done by her consent.

For the defendant the evidence was this : Mr. Arline testified, that he did not trade for said land before going into the army, but simply left with his wife the Hicks note to buy a place with it for him. Nor did he tell Pullen to make a deed to Mrs. Arline, nor knew that it was done till since the war. He did not authorize his wife or Pullen to resell such land as she might buy. He denied putting his wife under

Whitehead *vs.* Arline and wife *et al.*

Pullen's charge, further than by requesting him to see that she did not suffer. One Hall testified, that Mrs. Arline was an ignorant woman, and took him with her to buy said land, and the trade was made for the Hicks note without any intimation that Mr. Arline had traded for the land; and this was after Arline was gone into the army. Another witness testified, that Mrs. Arline was not present when Pullen sold to Whitehead. Whitehead testified, that Pullen represented himself as Mrs. Arline's agent, and Pullen, Mrs. Arline and himself agreed to the destruction of said deed to her, as aforesaid, and that it was, by oversight, handed to the Clerk, with other papers, for record. Mrs. Arline testified, that Pullen, when she went with Hall to buy the land, offered it for the Hicks note, she agreed, and he, of his own accord, had the deed made to her. When he had sold to Whitehead, he came and told her he had sold, called for the deed which he had made her, and said he would buy her another place; but he bought no other place, nor paid any part of the proceeds to her.

Whitehead's counsel requested the Court to charge the jury:

1st. If Mrs. Arline delivered up to Pullen his deed to her, to enable him to include this lot in his sale to Whitehead, and Pullen did so include it, Mrs. Arline is estopped from asserting title against Whitehead.

2d. Whether or not she got her money from Pullen is immaterial. If she, by putting her deed in Pullen's possession, enabled him to sell the lot to Whitehead, and Whitehead paid the agreed price, Whitehead's payment is good, and she must look to Pullen.

3d. If, with notice of the sale, Mrs. Arline acquiesced in it, and gave possession to Whitehead, she could not gainsay the sale, but had ratified it.

4th. If Mr. Arline left a note with his wife to purchase a home, and she took a deed to herself, the title vested in her, and she had a right to sell the land. Whether she was auth-

orized by her husband to have the deed made to herself or not is immaterial, as to Whitehead's rights   If Whitehead bought without notice that the deed was wrongfully made to her, he got a good title.

He refused to give the first request, saying: "It is upon an assumed state of facts." He refused to give the second and fourth requests. The third he gave, with this qualification : "If the title was in her under the law and she fully understood the consequences of her acquiescence."

He then charged the jury : If an husband buy property and take title to his. wife, she takes the property as an advancement and it becomes her separate estate.  A married woman cannot dispose of her separate property except through a trustee, while she may, in equity, do such acts as a Court of equity might compel a specific performance of, but only for the purpose of preventing fraud upon innocent parties.  If one sell property to a married woman and makes her a title, without the knowledge or assent of the husband, the title vests in the husband.  When one buys property, the title to which appears to be in a married woman, it is notice to him that the property belongs to the husband; and it is upon him to show that the husband caused the title to be made to the wife.  If the title to this land was in Mr. Arline, that title must be divested in a legal way, either by a direct conveyance of Mr. Arline or his legally constituted agent, under power of attorney, or by a fraud produced by Mr. Arline upon some innocent party.  It must be fraud by Mr. Arline.  If this deed was made to Mrs. Arline, without the knowledge or consent of Mr. Arline, then the title vested in him, and no conveyance by her could divest his title unless it was with his consent or direction. When there is a conflict between witnesses, it is the duty of the jury to reconcile the testimony if it can be done, but if it cannot be reconciled, then to look to the manner of the witness, his connection, etc.

The jury found for defendants in the bill.   Whitehead's

counsel moved for a new trial, upon the grounds that the Court erred in said refusals to charge as requested, said qualifications of requests, and in each part of his charge as given, and because the verdict was contrary to law, the evidence, etc. The new trial was refused, and error is assigned on each of said grounds.

HINES & HOBBS; VASON & DAVIS, for plaintiff in error.

FLEMING & RUTHERFORD, for defendants. Before Act 1866, acquisitions of wife belonged to husband: Old Code, section 1702. Her then agency: *Ibid,* sec. 1707. Notice to agent: 34 Ga. R., 298. Contracts of married women generally void: R. Code, sec. 2688. Though charge wrong, no new trial if verdict right: 37 Ga. R., 195.

WARNER, Judge.

It appears from the record in this case that Arline sold his land in 1861, to Hicks, for $1,500 00, and took his note therefor, and going to the war, he left the note with his wife to purchase a home during his absence, and requested Pullen, a neighbor and relative, to assist her. Pullen sold her a tract of land and received in payment therefor the Hicks note, and made a deed to the wife instead of her husband. Afterwards Pullen sold his land, including the land conveyed to Mrs. Arline, to Whitehead, promising, as Mrs. Arline states, to purchase for her other land, which he never did. When Pullen sold the land to Whitehead, Mrs. Arline gave up the deed made to her by Pullen, but executed no conveyance thereof. This deed was subsequently recorded, it is said, through mistake. When Arline returned from the war, he found Pullen had the Hicks note, and was in possession of the land, though professing to have sold it to Whitehead, and to have made him a deed therefor. Arline brought an action of ejectment to recover the possession of the land, whereupon Whitehead filed his bill to perpetually enjoin the action of ejectment, on the ground that he was a

*bona fide* purchaser for a valuable consideration without notice, and that Arline was estopped by the conduct of his wife in assenting to the sale of the land by Pullen to White-head.   On the trial of the case made by the bill and answers and the evidence in the Court below, the jury found a verdict for the defendants.   A motion was made for a new trial, on the ground of error in the charge of the Court, and because the verdict was contrary to law and the evidence, which motion was overruled and the complainant excepted. Prior to the Act of 1866, a conveyance of land to the wife without any words showing it was intended to be for her *sole and separate use,* vested the title in her husband, the more especially, when the consideration paid therefor, as in this case, was the property of the husband.

Although there is error in the charge of the Court to the jury, still, if the verdict is right under the law and facts of the case, this Court will not disturb it.   Whitehead knew the condition of the title when he purchased the land from Pullen, and received the deed made to Mrs. Arline as part of his title papers.   In our judgment the equity and justice of the case is decidedly in favor of the verdict, and the motion for a new trial was properly overruled.

Judgment affirmed.