JOHN DOE, ex demise, JOSEPH R. SHIPP *et al.*, plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and JOHN T. WINGFIELD, executor, defendant in error.

1. The statement of the overseer of defendant, who was in possession of the land, and managing his property for him as his agent, as to the reason why a fence was located in a peculiar manner, is admissible to prove the adverse possession of the defendant. (R.)

2. At the time of the commencement of this suit, the husband was the only person who could legally commence suit for land, the title to which was derived through the wife, consequently the statute of limitations ran during the coverture. (R.)

Statute of limitations.   Husband and wife.   Separate estate.   Adverse possession.   Before Judge CLARK.   Lee Superior Court, April Term, 1872.

Plaintiff in error brought ejectment on the several demises of Elizabeth Warmick, Joseph R. Shipp, and of Joseph R. Shipp in right of his wife, against defendants in error, for lot of land number two hundred and twenty-nine, in the first district of said county, containing two hundred and two and a half acres, more or less.   The defendants relied on the statute of limitation.

The following evidence was introduced for the plaintiff:

1st. Plat and grant in usual form from the State of Georgia to Elizabeth Warmick, dated December 13th, 1836, for lot two hundred and twenty-nine, in the first district of Lee county, which showed no pond on the lines between lots two hundred and twenty-nine and two hundred and thirty.

2d. Certificate of marriage, in regular form, showing intermarriage of Joseph R. Shipp and Elizabeth Warmick, on January 31st, 1833.

3d. Admission of possessions.

The defendants introduced the following evidence:

1st. Deed from Alexander Shotwell to Nicholas Wiley, dated November 11th, 1836, for the "Philemea old town" plantation, which deed included six or seven lots, and among them lots two hundred and thirty and two hundred and twenty-nine, in the first district of Lee county; said deed not recorded, but admitted on proof of execution.

2d. Deed from A. Tison to Alexander Shotwell, dated Nouember 1st, 1835, for lot two hundred and twenty-nine, first district of Lee county, recorded February 16th, 1836.

3d. The following testimony introduced on a former trial by agreement of counsel was read to the jury:

1st. William A. Maxwell testified that he rented the "Philemea old town" place of Shotwell, and cultivated it *that year*, (?) and Nicholas Wiley took possession the last of 1836, and he has occupied it ever since; that witness never knew

any of the numbers of the land forming the "Philemea old town or Shotwell place." Witness does not know whether he ever had possession of lot number two hundred and twenty-nine or not.

2d. Winson H. Walden testified that lot number two hundred and twenty-nine was a part of Wiley's "Philemea old town" place; witness never knew the place until 1854.

3d. Wiley Mitchell testified that in March 1845 he was working on boxes to freight his cotton, and he then saw acts of ownership, as the signs of timbers for boxes having been got on number two hundred and twenty-nine; that there was then a fence of Wiley's inclosing from five to ten acres of lot number two hundred and twenty-nine; that this fence inclosed a pond, which, if the fence had continued straight on, the line dividing two hundred and twenty-nine and two hundred and thirty would have passed through the pond; that there was no land of two hundred and twenty-nine inclosed which was fit to cultivate; that witness asked Wiley's overseer why he made the fence around the pond, who replied, 'that it was to avoid going through the water; that he did, not wish to go through deep water; that it was Wiley's land anyhow;" that in 1847 the whole lot was inclosed as a hog pasture. Witness, at the instance of Mr. Walden a year ago, examined the lines and corner-posts, and from this examination he testified to the numbers; that Wiley's fence has remained as in 1845, around the pond, up to the last time he saw the place; that it is a poor lot of land; there was no cultivated land between the fence and the water; the pond was too deep for the fence to go through it. Witness never saw the land until 1845; did not see it again until 1847, and it was then used as a hog pasture; the pond covered from five to ten acres of water on two hundred and twenty-nine; the line between two hundred and twenty-nine and two hundred and thirty passed nearly through the centre of the pond; the inclosure around the pond was all the fence or inclosure on the lot two hundred and twenty-nine, prior to 1847.

Plaintiff then introduced the depositions of John M. Smith, as follows: Witness was on lot two hundred and twenty-nine in the year 1847, about the 1st of March; he examined the lot very carefully; there was no clearing, house, field or occupant upon the lot; Nicholas Wiley examined the lot with witness; Wiley said "there was no house or field upon it at that time, but that he intended to fence said land the next fall" after witness was there; witness has not seen the land since 1847; the reason that witness examined the land carefully in 1847 was because he had a power of attorney from Joseph R. Shipp, authorizing witness to dispose of the same; witness does not know by whom said land was cleared, if it was cleared at all; in 1847 Nicholas Wiley told witness that "he had bought the land from a man named Shotwell, and that he would fence it the next fall." Joseph R. Shipp was to pay witness whatever he charged if he effected a sale of the land; witness was never paid anything for his services; witness ascertained the number of the lot as follows : He had the plat and grant with him, and Nicholas Wiley showed witness the corner, and the number on the corner corresponded with the numbers on the plat and grant; the lot and corner were shown to witness by Mrs. Wiley; Nicholas Wiley told witness it was lot two hundred and twenty-nine, and showed him the numbers "229" on the corner; witness has no hesitancy in saying that was the lot in dispute between the parties.

Plaintiff introduced the depositions of Thomas J. Asher, as follows : Some time in the month of June, 1849, witness went to see said lot for the purpose of selling it under a power of attorney; went to Wiley's house, who lived in the neighborhood of said lot; does not remember Wiley's given name; Wiley pointed out the lot and the station trees; Wiley said it was his land; there was no clearing on said lot; the lot was inclosed with a new fence; witness examined it carefully; there was no house on it; with the exception of the new fence, it was in a wild and uncultivated condition ; Wiley said he fenced said lot for a hog pasture; did not make this

examination of my own accord; was sent, or rather requested to do it by plaintiffs; had witness sold the land, would have charged for his trouble, though when witness arrived there, examined the lot, and saw that Wiley was trying to steal or take it from plaintiffs, they being poor, witness made no charge.

The jury, under the charge of the Court, returned a verdict for the defendants, and plaintiff moved for a new trial, upon the following grounds, to-wit:

1st. Because said verdict is contrary to the evidence.

2d. Because said verdict is contrary to the charge of the Court, as follows: "That the defendant must show a public, open, notorious and continuous possession for the full space of seven years before the day of filing the suit, to sustain the statute of limitations, or his title under it, and that defendants must make out their case clearly and distinctly."

3d. Because, on the trial of said case, the plaintiff objected to so much of the testimony of Wiley Mitchell as was hearsay, and gave the sayings of Wiley, the defendant, and of his overseer, and the Court overruled the objection, and allowed the whole of said testimony to go to the jury.

4th. Because the Court refused to charge the jury as follows: "That the statute of limitations does not run against the right of a married woman to land during her coverture, and that if it is proven that plaintiff's lessor, Elizabeth Shipp, is a married woman, her right cannot be barred by the statute;" "that the mere running of the fence down the lines of two hundred and thirty and two hundred and twenty-nine, until it met the pond, and running around the same because it was too deep to run the fence through, will not be a sufficient possession of the lot, for the statute to begin to run from that time;" and charged in lieu thereof as set forth in the 5th ground.

5th. Because the Court erred in charging the jury as follows: "That if Wiley inclosed with his fence, under a claim of title, five or ten acres of the pond on lot two hundred and twenty-nine, in running down the lines between lots two

hundred and twenty-nine and two hundred and thirty, (claiming lot two hundred and twenty-nine,) and remaining in adverse possession seven years before suit brought, it is such possession as will support the statute of limitations, and if seven years elapsed the jury must find for defendants; if Wiley in 1845 placed the fence on lot two hundred and twenty-nine by mistake, inadvertance or ignorance of the true line, the statute would not commence to run."

The motion for a new trial was overruled upon each of the grounds taken, whereupon plaintiff excepted and assigns said rulings as error.

HINES & HOBBS, for plaintiff in error.

VASON & DAVIS; W. A. HAWKINS, represented by R. F. LYON; G. W. WARWICK, for defendants.

WARNER, Chief Justice.

This was an action of ejectment on the several demises of Elizabeth Warmick, Joseph R. Shipp, and of Shipp in right of his wife, who had intermarried with Elizabeth Warmick, the donor of the land, against the defendants to recover the possession of lot number two hundred and twenty-nine in the first district of Lee county. On the trial the jury found a verdict for the defendant. A motion was made for a new trial on the several grounds specified in the record, which was overruled by the Court, and the plaintiff excepted. The defense relied on by the defendant was the statute of limitations. The land was granted to Elizabeth Warmick on the 13th December, 1836. Joseph R. Shipp intermarried with Elizabeth Warmick on the 31st January, 1833. This suit was commenced on the 1st day of May, 1853. The defendant claimed a title to the lot of land under a deed made by Shotwell, dated 11th November, 1836. Wiley took possession of the settlement of land purchased of Shotwell, (of which it is claimed the lot in dispute constituted a part

thereof,) the latter part of the year 1836, and has occupied it ever since.

Mitchell testified that in March, 1845, he saw such acts of ownership on the lot as the sign of timbers for cotton boxes having been got, and that there was a fence of Wiley's inclosing from five to ten acres of the lot in dispute, that this fence inclosed a pond while the fence of Wiley, if it had continued straight on the line dividing lots two hundred and twenty-nine and two hundred and thirty, would have passed through the pond. Witness asked Wiley's overseer why he made the fence around the pond, who answered that it was to avoid going through the water, that he did not wish to go through deep water, that it was Wiley's land anyhow. That portion of the witness' answer as to what Wiley's overseer said was objected to and the objection overruled, which is assigned as error. The materiality of this evidence is not very apparent in regard to the main question of possession. Wiley's fence was upon the land, and the statement of his overseer only gives the reason why it was there; that reason did not alter or change the location of the fence on the lot in dispute. But we think this statement of the overseer of Wiley, who was in possession of the land at the time, managing his property for him as his agent, was competent to prove the adverse possession of Wiley: Code, sections 3721, 2189. Shipp, as the husband of his wife, by virtue of his marital rights under the law as it existed at the time of the commencement of this suit, had the legal right to sue for the land and to reduce the same to possession as his property, and according to the ruling of this Court in *Prescott & Pace vs. Jones & Peavy,* 29 *Georgia Reports,* 58, he was the only person who could legally do so, as the title was in him, and not in his wife. The mistake of the plaintiff in error is in the assumption that, under the law as it then existed, that the wife had a *separate estate* in the land, independent of the marital rights of her husband, against which the statute of limitations did not run during her coverture. In view of the facts of this case, as disclosed by the record, and the

charge of the Court to the jury as to the law applicable thereto, we find no error in the refusal of the Court to grant a new trial: See *Wiley vs. Warmock et al.*, 30 *Georgia Reports*, 701.

Let the judgment of the Court below be affirmed.