Hooper *vs.* Howell.

LOUISA S. HOOPER, plaintiff in error, *vs.* EVAN P. HOWELL, guardian, defendant in error.

A wife's share of her deceased father's real estate, not distributed, but remaining undisposed of between the heirs, the same being wild lands, is not so in possession of the husband, as to bar the wife's right of survivorship, if he die before it is distributed or divided.

Husband and wife. Survivorship. Before Judge RICE. Gwinnett Superior Court. March Term, 1873.

Hiram Pittman died in 1838, in Gwinnett county, leaving a widow and four children, one of whom, Louisa S. Pittman, afterwards Green, now Hooper, is the plaintiff in error.

Emily Pittman, another one of the heirs-at-law of Hiram Pitman, died in the year 1850, intestate, without issue, having never married.

In the year 1854, Louisa S. Pittman intermarried with W. A. Green, of Fulton county. By this marriage, there were four children. He died in 1859, and in 1869 his widow, the said Louisa S., intermarried with W. R. Hooper, her present husband, by whom she has two children.

Besides other property, Hiram Pittman left about two thousand acres of land in Gwinnett county. The interest of the said Louisa S. Hooper in these lands, as one of the heirs-at-law of Hiram Pittman, is the subject of this controversy.

C. C. Green and W. A. Wilson administered on the estate of W. A. Green, and were discharged without having done anything with the Gwinnett lands, except that one of the administrators once went to Gwinnett and looked at said lands. John Pittman, one of claimant's brothers, gave the other administrator some papers relating to the Gwinnett lands, showing title in Hiram Pittman. The claimant relinquished her dower in the "*lands of her deceased husband,*" without specifying *what* lands.

In December, 1872, Evan P. Howell, guardian of the minor children of W. A. Green, the first husband of Louisa S. Hooper, obtained an order to sell the undivided four-fifths in-

terest of said minors, in certain described lots of land in the county of Gwinnett, as part of the estate of W. A. Green, deceased.   Louisa S. Hooper claimed the property.

The lots described in the order of sale are numbers two hundred and eighty-nine, two hundred and ninety, half of lot two hundred and sixty-seven, and one-third interest in lot two hundred and thirty-eight, and one-third interest in lot two hundred and fifty-nine, containing in all seven hundred and forty-two and two-thirds acres, which are a part of two thousand acres left by Hiram Pittman. .

On the trial, it was proved and admitted that the land in controversy was wild lands, before and during all the time of the first coverture, and were unenclosed and unoccupied. The guardian sought to prove by several witnesses that W. A. Green, in his lifetime, and after his marriage with claimant, spoke of the lands in dispute as belonging to him, and spoke of selling them.   To this testimony the claimant objected, on the ground that it was not competent to show title in W. A. Green by his own sayings.   The Court overruled the objection and admitted the testimony as showing verbal acts of ownership, and claimant excepted.

Counsel for claimant requested the Court to charge as follows:

1st. "That when a *feme sole* is entitled to property by inheritance, whether it be realty or personalty, upon her intermarriage in the year 1854, that inheritance was not cast upon the husband by his marital rights, in such sense as would vest the title in him, or in such sense as to defeat his wife's right to such inheritance upon his death, by survivorship, unless he reduced the property to possession during the coverture.

2d. "Merely speaking of the property as his, or speaking of making sale of it, would not be such reduction to possession.

3d. "That the marital rights of a husband who married in the year 1854 a *feme sole*, who was then entitled to property by inheritance from a father who died in 1838, or a sister who died in 1850, or both, attached only to that part of such

inheritance, which, during the coverture, he reduced to possession, and this principle applies whether the inheritance be realty or personalty." Which requests the Court refused, to but charged "that the property in controversy being shown and admitted to be wild lands, whatever right the claimant had in them was cast upon and vested in her first husband, William A. Green, upon her marriage in 1854, and that being wild lands during the coverture, no reduction to possession by the first husband was necessary in order to cause his marital rights to vest in him such a title as that, and when he died the land went to his heirs-at-law, and not to his widow by survivorship."

The jury found for the guardian. There was a motion for a new trial on the ground of error in admitting the aforesaid testimony as to sayings of W. A. Green, and in the charge and refusal to charge.

The motion was overruled and the claimant excepted.

THOMAS W. HOOPER; HILLYER & BROTHER, for plaintiff.

PEEPLES & HOWELL; T. M. PEEPLES, for defendant.

McCAY, Judge.

The precise nature of the possession which constitutes a personal chattel *in possession,* so as that it passes completely to the husband on the marriage, is not clearly settled by the authorities. It is difficult to reconcile even the decisions of our own Court. In *Pope vs. Tucker,* 23 *Georgia,* 483, and in *Prescott vs. Peavy,* 29 *Georgia,* 59, Judge BENNING, in delivering the opinion of the Court, gives it as his judgment that a personal chattel belonging to the wife, though in the adverse possession of another, is in her possession sufficiently to defeat the right of survivorship. But this is contrary to numerous other decisions: 1 *Kelly,* 637; 3 *Ibid.,* 549; *Stephens vs. Bell,* 4 *Georgia,* 223. And Mr. Bishop says this position is contrary to both principle and authority: See Bishop on Law of

Married Women, sec. 71, and authorities cited. But however the authorities may be in conflict upon this point, so far as I can find, they are uniform on a general principle which, we think, controls this case. When the interest of the wife is a share in an undistributed estate, the authorities are uniform that whilst it thus remains, the marital right of the husband does not attach : Lewis *vs.* Price, 3 Rich. Eq., 172 ; Stewart *vs.* Stewart, 31 Ala., 207, 216 ; McCauley *vs.* Rodes, 7 B. Mon., 462 ; Wheeler *vs.* Moore, 13 N. H., 478 ; Hill *vs.* Hill, 1 Strob. Eq. R., 1 ; 32 Ver., 775 ; 3 Sneed, 536 ; 10 Ver., 446. Such, too, has been the uniform ruling of this Court: *Bell vs. Bell,* 1 *Kelly,* 637 ; *Sayre vs. Flournoy,* 3 *Ibid.,* 549 ; *Chappel vs. Causey,* 11 *Georgia,* 24 ; *Lowe vs. Cody,* 29 *Ibid.,* 120. And this rule is founded on principle, since, in the nature of things, the share of the wife cannot be known. Her interest in any specific article is not defined. The law authorizes and requires a distribution, and one distributee may, in the division, get one article or one tract of land, and another get another. The principle applies to real as well as to personal assets. Our law makes it the duty of the administrator to distribute the one as well as the other : R. Code, secs. 2543, 2547. In this distribution, one may get personal property and another land. The question of advancements also arises, and debts due the intestate by the heir, all of which are to be adjusted in the distribution. The case does not stand, therefore, like a case of ordinary tenancy in common, where the title is complete in each to his undivided share.

Our law declares that the real estate shall go to the husband "as *personal property doth :*" Act of 1870, Cobb's Dig., 315. And our statute of distribution says, real and personal estate shall be considered as " precisely on the same footing." The language of the Act of 1789 is, that "real and personal estate shall *always* be considered, in respect to said distribution, as being *precisely* on the same footing, and in cases of intermarriage the real estate belonging to the wife shall become vested and pass to the husband in the same manner as personal property doth. And in case of the death of the

Hooper *vs.* Howell.

husband thereafter, intestate and without will, shall descend and become *subject to distribution* in the same manner as personal property." This statute is the law which regulates the rights of these parties. Here is real estate. The wife had an interest in it. On her marriage with Green, the statute says it passed to Green exactly as if it were personal property; and at Green's death it became subject to distribution *precisely* as personal property. Had it been personal property, no person would for a moment contend that the marital rights of Green would attach, so long as it was undistributed. How, then, can this Court be authorized to say that, it being realty, it did pass though undistributed.

The present proceeding is a peculiar one. The guardian applies to the Ordinary for leave to sell. The mother comes forward and claims the property: Code, section 3690, 3691. We are aware that both parties came into Court on the assumption that the rights of either is to a specified portion of this whole tract of two thousand acres. But the proceeding is a peculiar one, and on the trial the truth of the case appears, to-wit: that the father of Mrs. Hooper was the owner of the whole, and as the rights of both parties are from him, we recognize the right of both to a full investigation of the whole matter. The verdict, as it stands, does not, under the facts as they appeared, decree the truth of the case. We are clear that if there was never any distribution of this land—any division of it between the heirs-at-law of Mr. Pitman, during *the lifetime of Green*—it survived, under the law, to Mrs. Green, now Mrs. Hooper. It does not *appear* that this was done. This verdict—indeed the case, as it comes into Court—assumes this to have been done. We think, therefore, the verdict does not do justice to the rights of the parties. We, therefore, give this direction to the case. We think this verdict ought to be set aside, and the case stand for a further hearing, so that either party may take such proceedings as to bring the whole case before the Court, making all persons at interest parties. If there was, in fact, during the lifetime of Green, a division or distribution of this land, recognized or

agreed to by Green, or if it was divided under the law, on notice to him, we incline to the opinion that, it being waste land, it passed to him without more. But if he died before the share of Mrs. Green was ascertained, it survived to him.

Judgment reversed.