PRESENT—HIRAM WARNER, CHIEF JUSTICE.
H. K. McCAY,
ROBERT P. TRIPPE, } JUDGES.

LOUISA S. HOOPER, plaintiff in error, *vs.* EVAN P. HOWELL, guardian, *et al.*, defendants in error.

1. The title to land in dispute between the widow, who claimed under the will of her father, and the guardian of her minor children, depended upon whether her husband had reduced the same to possession prior to his death, so as to cause his marital rights to attach:

*Held,* that the brother of the widow, who was a nominal party to the record, was a competent witness to testify to facts showing a division of the estate of his father under which he also claimed, and to acts of ownership exercised by the husband, the land of the witness not being in controversy.

2. Where, upon the death of a testator, his property in wild lands was divided between his legatees, one of whom was subsequently married, and her husband exercised acts of ownership over her interest in the said property by claiming it as his own and endeavoring to sell it:

*Held,* that prior to the act of 1866, he acquired title to the same by virtue of his marital rights, and upon his death it passed to his heirs and not to his wife by survivorship.

3. Where the testator died in 1838, and shortly thereafter his executor divided the personalty between his legatees, one of whom has been in

possession of his distributive share of the land for twenty-three years, the presumption is that the entire estate was distributed, and that each legatee received his or her share with the assent of the legal representative.

Administrators and executors. Witness. Husband and wife. Presumption. Before Judge Rice. Gwinnett Superior Court. September Adjourned Term, 1873.

When this case was up before this court on a former occasion, (see 50 *Georgia Reports,* 165,) the following was the evidence: Hiram Pittman died in 1838, in Gwinnett county, leaving a widow and four children, one of whom, Louisa S. Pittman, afterwards Green, now Hooper, is the plaintiff in error here. Emily Pittman, one of the heirs-at-law of Hiram Pittman, died in the year 1850, intestate, without issue, having never married. In the year 1854, Louisa S. Pittman intermarried with W. A. Green, (then eighteen years of age,) of Fulton county. By this marriage there were four children. W. A. Green died in 1859, and in 1869 his widow, the said Louisa S., intermarried with W. R. Hooper, her present husband, by whom she has two children. Besides other property, Hiram Pittman left about two thousand acres of land in Gwinnett county. The interest of the said Louisa S. in these lands, as one of the heirs-at-law of Hiram Pittman, is the subject of this controversy. C. C. Green and W. A. Wilson administered on the estate of W. A. Green and were discharged without having done anything with the lands, except that one of the administrators once went to Gwinnett and looked at them. John M. Pittman, one of claimant's brothers, gave the other administrator some papers relating to the same, showing title in Hiram Pittman. The widow of W. A. Green, the claimant, relinquished her dower in the "*lands of her deceased husband,*" without specifying *what* lands. In December, 1872, Evan P. Howell, guardian of the minor children of W. A. Green, the first husband of claimant, applied for an order to sell the undivided four-fifth interest of said minors in certain described lots of land in the county of Gwinnett, as part of the estate of W. A. Green, deceased. Louisa S. Hooper, the

mother of said children, filed her claim.   The lots described in the application for the order of sale are numbers two hundred and eighty-nine, two hundred and ninety, half of lot two hundred and sixty-seven, a one-third interest in lot two hundred and thirty-eight, and a one-third interest in lot number two hundred and fifty-nine, containing in all seven hundred and forty-two and two-thirds acres, which are a part of the two thousand acres left by Hiram Pittman.

It appeared that the lands in controversy were wild lands, before and during all the time of the first coverture, were unenclosed and unoccupied.   Upon this state of facts the court held, that the marriage cast the lands on W. A. Green, in 1854, and on his death, in 1859, they went to his heirs, and not to his widow by survivorship.   On a writ of error to this court, this ruling was reversed; and on a new trial, had at the next September term of Gwinnett Superior Court, the guardian amended his application by striking out the share of Emily Pittman, to-wit: lots two hundred and thirty-eight and two hundred and thirty-nine; and by consent the pleadings were further amended so as to make John M. Pittman a party plaintiff with the guardian.

On this state of pleadings the parties again went to trial. The evidence was the same as before, except that relating to the alleged partition.   On this subject, W. T. Hunnicutt, sworn by the plaintiff, testified that he, Thomas P. Hudson, Mark Waits, Hiram R. Williams and Thomas H. Jones, were appointed commissioners to divide the lands, just after John Pittman came of age, about twenty-three years ago.   All acted but Jones.   All now dead but witness and Williams.   They made a division by lot, and it was agreed among the commissioners that Hudson, who was county surveyor, should make a return of it.   The witness had no personal knowledge of his having done so.   This division was made at the old Pittman homestead.   None of the heirs were present, and no notices served that witness knew of.   The commissioners received their fees for their services from Judge Hutchins, the attorney who attended to it.   In this division

the lands in controversy fell to Louisa.   Witness is able to state this clearly from having preserved a memorandum plat of it, made for him by Hudson, at his request, that he might show it to the heirs.   He put this away behind his clock, between the logs, where it was found about two years ago, when repairing his house.   A commission was sent to witness to act as commissioner.   It was from the inferior court, or court of ordinary.

The testimony of this witness was objected to on the ground that the division could not be shown by parol, but must appear from the record; upon which Evan P. Howell testified that the court-house and all the records of Gwinnett county were destroyed by fire; he had made full search, and could not find the record; upon which the court overruled the objection, and admitted the testimony as above given.

John M. Pittman was sworn for the plaintiffs, and testified that when he came of age, he employed Judge Hutchins, who was the attorney of Dr. Hoyle, as guardian, to attend to having the land divided for witness, and witness paid him for his services.   The land was divided by order of court, according to valuation.   Louisa got more land in acres than witness— about twice as much in acres.   Has no knowledge of the division, except what he was told by the commissioners.   Witness was living at Decatur at the time, and shortly afterwards, now twenty-three years ago, he moved up, and took possession of his part, and has lived there ever since.   Soon after Green's marriage with Louisa, he came up to Gwinnett to see about the lands.   He left witness in charge of the land.   He exercised ownership over the land; and when asked what acts of ownership, the witness replied that he claimed it, and wanted to sell it to witness.   Hiram Pittman left a will.   The will gave the land to the children.   Green and witness went together to the record and read the will.   Soon after Hiram Pittman died, the executor, who was a brother of testator, came up from Columbia county, where he lived, and divided the personalty, but did nothing with the land.   Witness did not give in the land in controversy for taxes as representing

Green. There were some old houses on the land built by the Indians, but no tenant in them or actual possession by any one in the life-time of Green. Lots two hundred and sixty-one and two hundred and sixty-five were no part of Hiram Pittman's estate. He only had a mortgage on them, and they were not included in the division.

The testimony of this witness as to all that took place between him and Dr. Hoyle, and between him and W. A. Green, both being dead, was objected to. The objection was overruled, and the testimony admitted.

The claimant put in evidence certain tax returns of W. A. Green, made in Fulton county, for the years 1858 and 1859, showing that he did not give in the lands in question for taxes.

The court charged the jury, amongst other things, that there was a presumption of law in favor of the regularity of the proceedings, the court-house being burned, with all the records. That if there was a division of the lands under the law, then the part set apart to her, (Louisa,) became hers in severalty. And further, that if there was such division, under the law, the land being wild land, vested in the husband, on marriage, without reduction to possession.

The jury found for the plaintiffs.

There was a motion for new trial on the grounds:

1st. Verdict strongly and decidedly contrary to evidence.

2d. Because the court erred in admitting the testimony of John Pittman touching matters occurring between him and Green, the latter being dead.

3d. Because the court erred in charging as above set forth.

The motion for new trial was overruled, and claimant excepted.

HILLYER & BROTHER; T. W. HOOPER; N. L. HUTCHINS, for plaintiff in error.

John M. Pittman was not a competent witness: Code, sec. 3854. John Pittman was a witness "in his own favor." It is this that is made the test by the statute: Crenshaw *vs.* Rob-

inson, 37 Ga., 118. The cause of action in issue and on trial was the alleged partition. John Pittman and the deceased, Green, were of opposite or adverse sides on that question: Perry *vs.* Hodnett, 38 Ga., 106. It is no reply that in this case the special fact exists that the testimony of Pittman tends to give the land to Green's children and heirs rather than his widow. The case is within the letter of the statute: Latimer *vs.* Sayre, 45 Ga., 472; Veal *vs.* Veal, 45 *Ibid.*, 511. The testimony of Pittman seeks to set up something against the act, character or estate of Green, which, if alive, he might have controverted: McCay, J., in Willingham *vs.* Smith, 48 Ga., 584. John M. Pittman was not only a party to the cause of action in issue and on trial, to-wit: *the partition*, but he was also a party to the record: Johnson *vs.* McCombs, 49 Ga., 122. In order to defeat the wife's right of survivorship, the husband must, during the coverture, have asserted his marital rights and dominion over the property by reducing it to actual possession: Bell *vs.* Bell, 1 Kelly, 637; Sayre and Sayre *vs.* Flournoy, adm'r, 3 Kelly, 449, 450; Stephens *vs.* Belle, 4 Ga., 323; Bishop on Law of Married Women, sec. 71, and cases there cited; Corley *vs.* Corley, 22 Ga., 181; Chappell *vs.* Causey, 11 *Ibid.*, 26; Lowe *vs.* Codey, 29 *Ibid.*, 117; 3 Kelly, 205; 5 Johnson's Chancery R., 196; 1 Kelly, 343; 9 Vesey, 174; 12 *Ibid.*, 497; 42 Miss., 1; 30 Ga., 74.

Peeples & Howell; Clark & Pace; T. M. Peeples, for defendants.

Warner, Chief Justice.

It appears from the record in this case that Howell, as guardian of the four minor children of W. A. Green, deceased, was proceeding to sell certain described lands, under an order of the ordinary for that purpose, as the property of said minor children, which said lands were claimed by Louisa S. Hooper, formerly Louisa S. Green, and widow of W. A. Green, deceased. On the trial of the claim case, the jury, under the charge of the court, found a verdict against the claimant. A

Hooper *vs.* Howell *et al.*

motion was made for a new trial on the several grounds set forth in the record, which was overruled by the court, and the claimant excepted.    There are but two questions made by the record which it is necessary for us to consider: First, as to the competency of John M. Pittman to testify in the case, and second, whether the title to the land in controversy was the property of W. A. Green at the time of his death, by virtue of his marital rights, or whether the claimant, as his widow, was entitled to the land as the survivor of her deceased husband.

1. Was Pittman a competent witness?    Our evidence act declares where one of the original parties to the contract or cause of action in issue or on trial is dead, the other party shall not be admitted to testify in his own favor.    The parties to the issue on trial in this case were the heirs-at-law of Green, his minor children, represented by their guardian, on the one side, and Mrs. Hooper, the claimant, on the other— all the parties being in life.    It is true the minor children claim title to the land as the heirs-at-law of Green, their father, who is dead.    Pittman was offered as a witness in support of the title of the heirs to their land, as well as in support of the title to his own land, which was not in controversy in the issue on trial.    The witness was offered to prove a division of the estate of Hiram Pittman during the lifetime of Green; the witness and Green, the father of the minor children, having derived their title to the respective shares of land claimed by them under the last will and testament of Hiram Pittman, deceased.    In our judgment, the witness was competent to testify in favor of the minor children in the issue then on trial before the court.

2. When this case was before this court on a former occasion, the facts were so imperfectly stated in the record then before us, that it was impossible to ascertain what were the legal rights of the parties.    We therefore ordered a new trial, so that the facts could be ascertained as clearly as possible in view of the fact that the court-house in the county in which the land was situate, containing all the records and proceed-

ings appertaining thereto, had been destroyed by fire.    New parties have been made, and upon the last trial additional facts were disclosed which enables us to understand what are the legal rights of the parties to the land in dispute.    It now appears from the evidence in the record that Hiram Pittman died in 1837 or 1838, leaving four children, one of whom is now Mrs. Hooper, the claimant; that Hiram Pittman left a will, by which he devised his lands to his four children, including the land in dispute; that after the death of her father, Louisa, the claimant, intermarried with Green, in 1854, who died in 1859, leaving the minor children now claiming the land in dispute, as his heirs-at-law.    Subsequent to the death of Green, Louisa intermarried with Hooper, and now claims her share of the land devised by her father's will to her and her brothers and sisters, on the ground that Green, her first husband, never reduced her share of his land to possession during his life-time, and that it survived to her, and did not pass under the law to his children by her, who were his legal representatives.    After the death of her father, Hiram Pittman, she, with the other devisees under his will, held the land as joint tenants, or as our law now stands, as tenants in common, and the question is whether, under the law as it existed at the time of her intermarriage with Green, he acquired a title to the land by virtue of his marital rights.    The question is not whether she would be entitled to assert the wife's equity in a court of equity as against her husband, or against her husband's creditors, as was the case of *Bell vs. Bell*, 1 *Kelly's Reports*, 637, and that class of cases; but did the title to her real estate, devised under her father's will, become vested in and pass to her husband on her intermarriage with Green?    The act of 1789 declares that in cases of intermarriage since the 22d day of February, 1785, the real estate belonging to the wife shall become vested in and pass to the husband in the same manner as personal property doth, and in cases of the death of the husband thereafter, intestate and without will, the said estate shall descend and become subject to distribution in the same manner as personal prop-

erty: Cobb's Digest, 305; *Jones vs. Peavy,* 29 *Georgia Reports,* 58; *Shipp vs. Wingfield,* 46 *Georgia Reports,* 593; *Rogers, trustee, vs. Cunningham,* 51 *Georgia Reports,* 40. That the real estate which was devised to her by her father's will belonged to Louisa at the time of her intermarriage with Green, cannot be disputed, from the evidence now contained in the record, however doubtful it might been from the evidence before us on the former hearing of the case. The evidence is pretty clear that there was a division of the land between the devisees under the testator's will, and that Louisa's share was set apart to her, and being wild land, her husband reduced it to possession so far as the same was capable of being reduced to possession after his intermarriage with her.

3. It also appears from the evidence that shortly after the death of Hiram Pittman, the testator, in 1838, his executor divided the personal estate amongst the legatees thereof, and after such a lapse of time, the legal presumption is that the entire estate of the testator was distributed amongst his legatees and devisees, and that each one received his or her share thereof with the assent of the executor, the more especially as one of the devisees under the will has been in the possession of his distributive share of the land for twenty-three years. In view of the facts of this case, as now disclosed by the record before us, Louisa's share of the land devised to her by her father's will, (the same being wild lands) vested in Green, her first husband, on her intermarriage with him, and at his death, intestate, descended to and became subject to distribution amongst his heirs-at-law, and did not survive to her.

Let the judgment of the court below be affirmed.