ARCHER, administrator, *et al. vs.* GUILL.

| | |
|---|---|
| 67 | 195 |
| 103 | 488 |
| 105 | 158 |

| | |
|---|---|
| 67 | 195 |
| 122 | 75 |
| 123 | 350 |

1. Property to which a wife was entitled prior to the act of 1866, and which her husband reduced to possession as his own estate, either before or after that act, became his by virtue of his marital right ; but where after that act a husband reduced property to possession, not in his own right, but in right of his wife, it was her separate estate ; and both the husband and his privies were estopped from denying her right thereto.

(*a.*) The right of the wife being to a share in the *residuum* of an estate under a will, and not being determined or set apart to her until 1867, could the marital right of her husband attach, although the will took effect prior to 1866? *Quaere.*

2. A judgment of a court of competent jurisdiction cannot be collaterally attacked, and parol testimony for that purpose is inadmissible.

Husband and Wife. Title. Evidence. Before Judge POTTLE. Hancock Superior Court. March Term, 1881.

To the report contained in the decision it is only neces-

sary to add that interrogatories of P. T. and E. M. Pendleton were offered for the purpose of showing that Guill, the husband of complainant, went into possession and claimed the property in dispute as his in 1866 (prior to the application for division and judgment of the ordinary thereon). This testimony was rejected, and its rejection formed one ground of the motion for new trial.

C. W. DuBose; J. T. Jordan, for plaintiffs in error.

Seaborn Reese, for defendant.

Crawford, Justice.

Mrs. Nancy H. Dickson, the widow of Quincey L. Dickson, in the year 1864, filed her bill in equity against the executors of John Dickson, deceased, for the purpose of recovering her proportionate share of the *residuum* of his estate. On the hearing of the said bill it was decreed that the said executors account to her for one-sixth part of the said *residuum*, and that the same be delivered to her in kind without a sale of any of the property composing the same.

The only part of the property material to this case is the one-sixth part of the real estate, which consisted of four thousand eight hundred and six acres. Very soon after the decree in the said bill, in the year 1864, the said Nancy intermarried with one Alexander Guill, and in the year 1867 the said Guill filed the following petition:

Georgia—Hancock county.

*To the court of ordinary of said county, August term, 1867:*

The petition of Alexander Guill respectfully showeth to the court that, in right of his wife, Nancy, who was the widow and relict of Quincey L. Dickson, late of said county, deceased, that he is entitled to one-sixth part of the real estate of John Dickson, deceased; that said title ensues to your petitioner under item 7th of said John Dickson's last will and testament, now of record in the court of ordinary,

wherein the widow of said Quincey L. (he marrying with the consent of the executors appointed and nominated by the said John Dickson, and the said Quincey L. leaving no children surviving him,) shall receive one-sixth part of the remainder of said John Dickson's estate, after due compliance with proceedings begun by the executors so appointed and nominated. That said title and bequest was unto your petitioner, in the right of his wife, Nancy, by verdict of special jury at the October term of the superior court, sitting as a court of chancery, 1864, and the order of the chancellor making the verdict of the jury final.

Whereupon your petitioner further shows that he has given due and legal notice to all the parties in interest of said estate by personal service of the same. Whereupon he prays the appointment of three or more freeholders, to set apart to him in said right, one-sixth part, in valuation, of all the land belonging to the estate aforesaid, and liable to distribution, lying and being in the county aforesaid, and assign to him, in said right, by metes and bounds, that number of acres of land to which he may be entitled, and that the freeholders, so appointed, be required to make a return of their actings and doings in the premises to the court of ordinary for further action. And your petitioner will ever pray, etc.    A. GUILL.

*August 5th, 1867.*

Under this petition five commissioners were appointed by the ordinary at the said August term, 1867, to set apart and lay off the one-sixth part of the said land as prayed for, which they did on the 16th of September next thereafter, and on the 1st day of March, 1869, the said return was ordered and adjudged to be entered of record in the book of divisions for said county, and is as follows:

GEORGIA—Hancock county.

The undersigned having been appointed to view and appraise the lands of the estate of John Dickson, late of said county, deceased, lying in said county, and to set off to A. Guill, in right of his wife, formerly Mrs. Dickson, the widow of Q. L. Dickson, deceased, she being entitled, under the will of said John Dickson, deceased, to one-sixth part of his estate, have this day looked over the land. We find from a plat made out by T. H. Audas, that the tract of land shown us contains 4,806 acres. We leave off 16 acres, claimed as belonging to the Knowles' place, leaving as property belonging to the tract 4,790

acres, which we have estimated to average five dollars per acre, making the sum of $23,950.00, one-sixth of which is $3,991.66.

. We decree that there shall be set off to him the lands running from the southeast corner of Forbes' land, running in an easterly direction, so as to embrace the houses where John Dickson lived at the time of his death, to such a point that a straight line from that point to the Sandersville road, including all the lands on the north side of said road, down to the lands of the estate of Mrs. Brooking, so as to embrace, or contain, 798 acres of land, considering the same about an average of all the lands.

THOMAS M. TURNER,<br>
COSBY CONNELL,<br>
.HENRY H. CULVER.

*Sparta, September 16th, 1867.*

In January, 1877, and in February, 1878, joint notes and mortgages on this one-sixth of the land described, were made by the said Guill and the said Nancy H., his wife, to William Archer and William Stevens. In June, 1879, the said Guill died, and letters of administration were taken out on his estate by William Archer, one of the mortgagees and plaintiffs in error in this case. In proceeding to administer the estate of the said Guill he embraced the land covered by the will of John Dickson, the decree of the court and the return of the commissioners aforesaid. Pending the advertisement of the said administrator Nancy H. Guill filed her bill in equity, setting up the facts hereinbefore stated, and asserting her title to the said land, and alleging that in signing the notes and mortgages she was. pledging her separate estate for the debts of her husband.

On the hearing, a verdict was rendered for the said Nancy H., and a decree in conformity therewith was made by the court.

The judge gave the following charge to the jury:

"Previous to the act of 1866, the law was, that all the property of the wife became the property of the husband by virtue of his marital rights, and subject to be reduced to possession by him. If not reduced to possession by him, her equity to it attached.

" By the decree made in 1864, in this court, Mrs. Guill became the absolute owner of the one-sixth undivided interest of the lands of John Dickson. It seems from the record before me, that afterward a petition was filed in the court of ordinary, in 1867, for the partition of the lands, and the assignment to Mr. Guill, in right of his wife, of her portion. There is also a record of the return of the partitioners, dated in September, 1867, and in 1869 it was made the judgment of the court. What the record means, is a question of law for the court.

" Therefore, I charge you, when Guill went into possession under that judgment of the court of ordinary, he went in in right of his wife, and not in his own right; and he would be estopped from asserting to the contrary if he was in life. This estoppel applies to all who claim under him, to parties and privies. Archer and Stevens are both privies, and are as much estopped as Guill would be by that judgment."

If the foregoing charge, under the facts set out in the record, be the law governing the case, then the verdict and decree were right, under all the testimony, and the other assignments of error are immaterial.

The decree of the chancellor in 1864 required the executors of John Dickson to account with and deliver to Nancy H. Dickson one-sixth part in kind of the *residuum* of the estate of John Dickson. Some five weeks after this decree she became the wife of Alexander Guill, and whatsoever of her estate he reduced to his possession before December the 13th, 1866, became absolutely his property, and so, too, if he had reduced it afterwards as his own estate. If, however, after that time he reduced it to possession as the property of his wife, then it was hers, and continued her separate estate. 57 *Ga.*, 412.

It will be seen by his petition that he comes into the court of ordinary "in right of his wife, Nancy, who was the widow, etc., * * * that said title ensues to your petitioner under item 7th of John Dickson's will. That said

title and bequest was unto your petitioner, in right of his wife, Nancy, by verdict of special jury, etc. Whereupon he prays the appointment of three or more freeholders to set apart to him in said right one-sixth part, etc., * * * and assign to him in said right by metes and bounds, etc."

Again, in the order appointing the commissioners the ordinary says: "On reading and filing the petition of Alexander Guill in right of his wife Nancy * * * he is, in such right, entitled to one-sixth part of the estate of John Dickson, and that the interest had been found by verdict and decree at October term, 1864, etc." The commissioners named to appraise and divide the land say: "Having been appointed to set off to A. Guill in right of his wife, formerly Mrs. Dickson, the widow of Q. L. Dickson, she being entitled under the will, etc." And it will be further seen that the ordinary in receiving and ordering to record the return of the commissioners uses the same language. So that it clearly appears that the whole proceeding was not in his own right, but that of his wife. If he had proceeded to have had this property set apart to himself by virtue of his marital right and it had been done, that would have fixed the title absolutely in him. All the evidence in the case shows that it was not possible for him to have reduced it to possession until the year 1867, and that at all times afterwards he treated it as the property of the wife.

Besides, this legacy consisting of one-sixth part of the *residuum* of the estate of John Dickson, the same being uncertain, and possibly not to consist of anything, might it not well be asked, whether being acquired in 1867 by her, under the will of John Dickson, could the husband have taken it at all?

But it is said that Mrs. Guill is estopped by her mortgages; this would be true in all cases where the title is obtained by a *bona fide* purchaser without notice, but where there is notice, as in this case, the conveyance is absolutely void as to her separate estate. Code, 1783; §2640.

2. As to the testimony of the Pendletons which was ruled out, there was no error, because it was seeking to go behind the judgment of the court of ordinary in assigning this property on the petition of her husband to Mrs. Guill, he was concluded and necessarily were those who sought to claim under him.

Counsel for complainant having abandoned all right to a verdict on the ground of duress from the case, in open court and in presence of the jury, no ruling of the court thereon was necessary.

Judgment affirmed.