HUDGINS *v.* CHUPP *et al.*

Under the statutes of this State as they were in force prior to the act approved December 13, 1866 (Acts 1866, p. 146), all the real estate of the wife in her possession and to which she had title at the time of the marriage vested in and belonged to the husband. Accordingly, in a suit to recover lands, where one of the parties claimed title under a deed made by the wife during the coverture and prior to the passage of the act of 1866, and the claim of title on the part of the other party rested upon a conveyance executed by the husband, and it did not appear that the above-mentioned rule of law had been rendered inoperative by reason of a marriage contract, the latter should prevail. There was no error in the judgment of the court sustaining the demurrer to the plaintiff's petition whereby a recovery was sought under the conveyance from the wife.

Argued December 17, 1897. — Decided March 3, 1898.

Equitable petition. Before Judge Fite. DeKalb superior court. August term, 1897.

*R. J. Jordan* and *Albert & Hughes*, for plaintiff.

*Hoke Smith & H. C. Peeples, John T. Pendleton, Candler & Thomson* and *W. W. Braswell*, for defendants.

LITTLE, J. From the petition filed in this case, and which was dismissed on demurrer, it appears that the plaintiff based her right to recover upon a trust deed executed by her mother, in which the plaintiff and others were named as cestuis que trust. It is alleged that the property in controversy was bought by petitioner's mother from Thomas Wood in 1841, and that

prior to the war "petitioner's mother, the wife of John Hudgins," executed the trust deed to which we have just referred. Whether the purchase made by petitioner's mother from Thomas Wood occurred prior to, or after and during her marriage to John Hudgins, does not appear; nor does it appear by what character of instrument Wood conveyed to the mother of petitioner. It is alleged in the petition that the defendants claim under a deed executed by John Hudgins, the husband of petitioner's mother, on December 14, 1867. It is contended by the plaintiff in error, that the trust deed executed by her mother during the coverture carried the title into the trustee for the use of the beneficiaries therein named; that the deed subsequently executed by her husband, John Hudgins, passed no title, for the reason, as contended, that title to the property was not vested in him, he never having taken possession under his marital rights, but recognized the property as the separate property or estate of petitioner's mother. The question therefore arises: in whom was the title to the property in controversy vested at the time of the conveyance made by Mrs. Hudgins; and consequently, as between the husband and wife, which had the right to convey?

At common law, if the wife at the time of the marriage was seised of an estate of inheritance in land, the husband, upon the marriage, became seised of the freehold jure uxoris, and was entitled to the rents and profits during their joint lives. It was a freehold estate in the husband, since it must continue during their joint lives (unless in contemplation of law there be a cessation of the coverture); and it might by possibility last during his life, as where there has been a child of the marriage born alive, which might be capable of inheriting the estate, in which event the husband takes the estate absolutely for life as tenant by the curtesy. 2 Kent's Com. (12th ed.) *130; Goke, Litt. 351 a; 9 Am. & Eng. Enc. L. 841, and authorities cited; Schouler's Dom. Rel. (5th ed.) § 89, and authorities cited; 1 Bright's H. & W. 112. The husband alone could grant or -charge the wife's land during their joint lives, and, if tenant by the curtesy, during his own life. But he could not alien or incumber it so as to prevent the wife or her heirs, after his

death or the termination of his freehold estate, from enjoying it discharged from his debts and engagements. The husband could indeed convey his interest and the same was liable for his debts, but on his death, or on the termination of his freehold estate resulting from any cause, the property passed to the wife again, or her heirs, free from all acts of his. 2 Kent's Com. (12th ed.) *133; 9 Am. & Eng. Enc. L. 842; Schouler's Dom. Rel. (5th ed.) § 90; 1 Cord, Legal and Equitable Rights of Married Women, § 488 d. Under the common law, therefore, the husband acquired by reason of the marriage no more than a freehold estate in the real estate of which the wife was seised in fee at the time of the marriage, or became so seised during the coverture.

But under the statute law of Georgia, as it was in force in this State prior to the passage of the act approved December 13, 1866 (Acts 1866, p. 146), commonly known as the married woman's act, the rights of the husband in the real estate of the wife were, as compared with his rights under the common law, vastly enlarged. By the act approved December 23, 1789, it was provided, in substance, that in cases of intermarriage since the 22d day of February, 1785, the real estate belonging to the wife shall become vested in and pass to the husband in the same manner as personal property doth [at common law]. Prince's Digest, 225; Hotchkiss, Statute Law, 428. And we find the provisions of this statute substantially embodied in section 1701 of the Code of 1863, which reads, so far as material here to be set out, as follows: "Upon marriage, all the real estate of the wife, and all the personalty in possession, or which may be reduced to possession by the husband during his lifetime, shall vest in and belong absolutely to the husband, except that such property shall not be liable for the payment of any debt, default, or contract of the husband, existing at the time of the marriage." By the language of the statute, the title to the real estate shall become vested in and pass to the husband "in the same manner as personal property doth," at common law. In the case of *Prescott* v. *Jones*, 29 *Ga.* 60, Benning, J., in delivering the opinion of the court, construes the language of the statute, in the use of the words "personal prop-

erty," as having reference to property in possession, and not choses in action. Under this construction, when the nature of the right which the husband acquires at common law in the personal property of the wife in possession is ascertained, the character of the title which vests in the husband, to lands of which the wife is seised in fee at the time of the marriage or becomes so seised during the coverture, will be manifest. As to personal property of the wife which she had in possession at the time of the marriage, and not en autre droit, such as money, goods and chattels and movables, they vest immediately and absolutely in the husband, and he can dispose of them as he pleases, and on his death they go to his representatives as being entirely his property. 2 Kent's Com. (12th ed.) *144. In speaking of such property, Blackstone (2 Bl. Com. 435) says : "The husband hath therein an immediate and absolute property, devolved to him by the marriage, not only potentially, but in fact, which never can again revest in the wife or her representative." To same effect see Schouler's Dom. Rel. (5th ed.) § 80; 9 Am. & Eng. Enc. L. 843, and authorities cited. Accordingly, in the case of *Prescott* v. *Jones*, 29 *Ga.* 60, it was held that marriage gives to the husband such a title to the wife's land that he may, after her death, although he has never reduced it into his possession, sue for it and recover it without having administered on her estate, the court holding that by the act of 1789 the husband had in the land an immediate and absolute property devolved to him by the marriage, not potentially, but in fact. In the case of *Whitehead* v. *Arline*, 43 *Ga.* 221, it was ruled that a conveyance of land to the wife, made prior to the act of 1866, without any words showing it was intended for her sole and separate use, vested the title in her husband, the more especially when the consideration paid therefor was the property of the husband. In the case of *Shipp* v. *Wingfield*, 46 *Ga.* 598, the court, in holding that the statute of limitations would run in favor of one in adverse possession of the wife's land as against the husband during coverture, ruled that the plaintiff, as the husband of his wife, by virtue of his marital rights under the law as it existed at the time of the commencement of the suit, had the legal right to sue for the

land and to reduce the same to possession as his property, and that according to the ruling in *Prescott* v. *Jones*, 29 *Ga.* 58, he was the only person who could legally do so, as the title was in him and not in his wife. Of like import is the case of *Cain* v. *Furlow*, 47 *Ga.* 674.

. In the case of *De Vaughn* v. *McLeroy*, 82 *Ga.* 687, it is announced in the opinion of the court, that there is no distinction whatever in this State between real and personal property as regards the marital rights of the husband; and that all cases of personalty will, under the same facts, apply to realty, and vice versa, citing act of December 23, 1789, Cobb's Dig. 305; *Hooper* v. *Howell*, 50 *Ga.* 168–9, s. c. 52 *Ga.* 322–3; *Archer* v. *Guill*, 67 *Ga.* 195; *Grote* v. *Pace*, 71 *Ga.* 231–5; *Sterling* v. *Sims*, 72 *Ga.* 51. It was further announced in the *De Vaughn* case, supra, that prior to the passage of the woman's act of 1866, the marital rights of the husband only attached absolutely to the real and personal property to which the wife had the legal title and possession, citing as authority for the proposition the cases of *Bell* v. *Bell*, 1 *Ga.* 637; *Pope* v. *Tucker*, 23 *Ga.* 484; *Prescott* v. *Jones*, 29 *Ga.* 58; *Shipp* v. *Wingfield*, 46 *Ga.* 599; *Cain* v. *Furlow*, 47 *Ga.* 674; *Hooper* v. *Howell*, 50 *Ga.* 168; *Bradley* v. *Saddler*, 54 *Ga.* 681. This of course must be understood as meaning that title to the real and personal property to which the wife has the legal *title* and *possession*, vests absolutely in the husband. Were it otherwise, there would be no distinction between the rights of the husband with respect to property the legal title and possession of which were in the wife, and other estates, choses in action, etc., not in possession, in which the husband acquires an absolute vested right to reduce such estates, choses in action, etc., into his possession and thus fix the title in himself. See the case of *De Vaughn* v. *McLeroy*, 82 *Ga.* 687, supra. It would be illogical to contend under the common law that in order for the husband to acquire title to the wife's property in possession by virtue of his marital rights, he would be required to reduce the same to his possession; for, in contemplation of that law, the husband and wife were one; the wife's existence was merged in that of her husband; she had herself no property in possession; her

possession was her husband's possession, and "even money in her pocket was deemed in his actual possession." Stewart's H. & W. § 119.

It is clear that under the law as it stood prior to the passage of the act of 1886, the marital rights of the husband absolutely attached to all real estate of the wife to which she had title and possession. But it is contended by the plaintiff in error that, though the wife had title to the land in dispute, the husband did not take possession of the same, but recognized the land as his wife's separate estate. No allegation was made that possession of the land was held adversely to the wife, nor that for any cause she was not in possession of the same. Under the allegations of the petition, the wife had the right of possession, and the right of property, and if she was not in fact in possession, the onus was on the plaintiff to allege and prove it; for if she was in possession, that possession would be treated as the possession of her husband, and his marital rights would, without more, attach. Having so attached, he and not the wife would have the right to convey the same. Indeed, at common law, the husband alone could grant or charge the wife's land during their joint lives, or during his own if tenant by the curtesy; and as to personal property in possession of the wife at the time of the marriage in her own right, it vested immediately and absolutely in the husband. 2 Kent's Com. *130, *144. We do not think therefore that the general allegation in the petition, that the husband did not take possession of the land but recognized it as his wife's separate estate, is sufficient, in the light of other allegations made in the petition, to show a right of recovery in favor of the plaintiff. It is true, in the case of Evans v. Bethune, 99 Ga. 582, where land was conveyed by deed to a married man as trustee for his wife, naming her, and it appeared that the husband accepted the deed as being effectual for that purpose and recognized the property as the wife's, this court held that such land must be treated as the separate estate of the wife, although the deed was made prior to the act of 1866. But such we do not understand to be the principle which applies in this case. While the petition does aver that the husband recognized the title of this property to have been in the

wife, yet it must also be remembered that the petition likewise avers that the husband conveyed it to a purchaser by his own personal deed during the coverture.  As a matter of law, the title to this land, it being,˜ so far as the record shows, in the possession of the wife, vested absolutely in the husband, and the alleged recognition that the title was in the wife is entirely inconsistent with this assertion of his marital rights in respect to the property.  In the case of *Evans* v. *Bethune*, supra, in delivering the opinion, Chief Justice Simmons says: "If by clear and explicit intention, or by the use of proper terms, a separate estate is created in the wife, she so takes and the marital rights of the husband do not attach."  In the present case no intention to recognize the property as the separate estate of the wife is averred to have been other than in general terms; no distinct recognition of any character is averred which could be held to have prevented the marital rights of the husband from attaching, or to have defeated the assertion of such rights on the part of the husband, as manifested by the destruction of the deed which the wife executed, and the conveyance of the land for a valuable consideration by his own personal deed.

Nor does the fact that the husband's conveyance was not made until after the passage of the act of 1866, affect his right to convey the land.  His marital rights had attached prior to the passage of that act; they were vested rights, which were in nowise affected by the provisions of the act.  *Sperry & Niles* v. *Haslam,* 57 *Ga.* 412; *Archer* v. *Guill,* 67 *Ga.* 195; *Grote* v. *Pace,* 71 *Ga.* 231; *Comer* v. *Allen,* 72 *Ga.* 1; *De Vaughn* v. *McLeroy,* 82 *Ga.* 709.

It results from the authorities cited that the title to the property, it not appearing that it was vested in the wife for her sole and separate use, became vested by law in the husband; and there being no suggestion that this rule of law had been rendered inoperative by reason of any marriage contract executed on the part of the husband, the trust deed executed by the wife was of no force or effect, and that executed by the husband passed the title and must prevail.

*Judgment affirmed.     All the Justices concurring, except Lumpkin, P. J., and Cobb, J., who were disqualified.*