Yeldell *vs.* Shinholster.

No. 21.—WM. R. YELDELL, plaintiff in error, *vs.* THOMAS J. SHINHOLSTER, defendant in error.

[1.] An administrator who takes possession of property which is in the possession of his intestate at his decease, but to which another has title, and disposes of the same as the property of his intestate, is individually liable in an action of trover, for the conversion thereof.

[2.] It is not proper for counsel to interrupt the Court, while charging the Jury, for the purpose of asking for other instruction to them.   But it is proper after the charge is closed, to call the attention of the Court to a point omitted, and on which the charge should be given.   And it is the duty of the Court to instruct the Jury in relation to the same.

[3.] It would be better if requests to charge, could be submitted in writing before the Court proceeds to charge; but if, in the pressure of business, this is impracticable, in such event, after the charge has closed, the attention of the Court may be called to the point omitted.

[4.] Where a Jury, charged with a case, had returned into Court for the purpose of seeking further instructions, and the counsel for one of the parties asked for the charge of the Court on a point upon which the Court had not charged, and on which it was proper that the Jury should receive instructions:   *Held*, that it was error in the Court to refuse the same.

Trover, in Bibb Superior Court.   Tried before Judge POWERS, November Term, 1853.

This was an action of trover, brought by the plaintiff against the defendant in error, for the recovery of ten negroes and a horse.   The defendant pleaded the general issue.

On the trial, plaintiff read to the Jury the testimony of Thomas S. Hays, Overton Sego and Joseph M. Cooper.

Hays swore—That he had conversation with Randolph Blackwell, while in life, some four or five years before, in which Blackwell stated, that he wanted to buy a farm for plaintiff, somewhere between McMinnville, Tennessee, and Macon, Georgia, as he thought the climate would suit plaintiff; that he had never given plaintiff's father anything; spoke kindly of plaintiff, and said it was his intention to do a good part for him.

Sego testified—That in the early part of 1851, Blackwell told witness, that he had given the negroes on a place in Bibb county, to William R. Yeldell, his grand-son, and had put him in possession of them; witness saw the negroes in possession of plaintiff; Blackwell told witness that he had written to plaintiff in Kentucky, to come to Macon and he would give him the place and the negroes. Witness identified the negroes sued for, as the negroes that had been given to plaintiff by Blackwell.

Cooper swore—That in a conversation with Randolph Blackwell, the latter told him that he had bought the place on the Houston road, in Bibb county, and brought the negroes on it, down here, and gave both negroes and plantation to his grandson, the plaintiff, and had put him in possession of them.

Jesse Morris sworn—Stated " that he had seen the negroes and horse sued for ; in 1851, was Coroner of Bibb county—heard Randolph Blackwell had been found dead at the place where he resided near Macon—went out to hold inquest over his body— found the negroes there, and took possession of them as Coroner—the plaintiff was there at the time—delivered over the property to J. M. Fields".

J. M. Fields sworn—Testified, that he knew the negroes in controversy. Early in 1851, after the death of Randolph Blackwell, received the negroes of Morris, kept them a short time, and then delivered them to Thomas J. Shinholster. In a controversy between witness and John R. Blackwell, the Kentucky executor, as to the possession of the negroes, plain-

tiff was recognized and treated as a minor, and seemed to be entirely under the influence of John R. Blackwell".

Plaintiff then introduced in evidence, the records of the Court of Ordinary of Bibb county, which showed that the defendant, as the administrator, with the will annexed, of Randolph Blackwell, in April, 1852, sold said negroes for cash, $5255,00, and the horse for $75, said sale purporting to have been made by virtue of the will of Randolph Blackwell, as the property of said estate—also showed, that defendant still had the proceeds of the sale in his hands. Demand and refusal were admitted—the defendant stating at the time, that he had parted with the possession of the property under the sale as administrator.

Defendant then read in evidence, the will of Randolph Blackwell, made on the 17th day of March, 1850, in Madison county, State of Kentucky, in which he disposed of all his property, and in which he appointed his son, John R. Blackwell, one of his executors, and which was admitted to probate on the 24th day of February, 1851, in the Probate Court of that county and State.

Much other evidence was adduced, both by defendant and plaintiff, which it is not necessary to set forth.

Among other things, the Court charged the Jury, "That if they should find, from the evidence, that Randolph Blackwell was in the possession of the property at the time of his death, and that Morris, as Coroner, after his death, took possession thereof, as the property of Blackwell, and through Fields the same was delivered to defendant as administrator of Blackwell, and that he, as such administrator, sold the same under the will of Blackwell, without notice of plaintiff's claim, then the plaintiff, in this form of action, could not recover, and they must find for the defendant; and if these facts were found to exist, it was not necessary that they should look into the title of the property, because plaintiff could not recover against Shinholster, under this state of facts, however good his title might otherwise be, his remedy was in trover against the persons who held the negroes, or by bill in Equity against defend-

ant, for account, &c. of the proceeds of the sale, who had but discharged a duty imposed upon him by law."

Counsel for complainant asked the Court to charge the Jury, "as to what would be the law of the case, in the event the Jury should believe, from the evidence, that the title to said property was in the plaintiff at the time of Blackwell's death, and should farther find that plaintiff was, at that time, also in possession of said property "; which charge the Court refused to give, because the request was made after the Court commenced its charge, and because it was based upon a state of facts that did not exist.

To which charge and refusal to charge, counsel for plaintiff excepted. The Jury retired, and being unable to agree, returned into Court for a further charge, when the Court charged them as before. Counsel for plaintiff asked the Court to charge the Jury as before requested; and further "that the title to the property being found to be in plaintiff, by the Jury, then the sale by the defendant, of the property, under the proof before the Jury, was a conversion thereof, and they must find for the plaintiff"; which charge, the Court refused to give, for the reasons already assigned; and also on the ground, that when the Jury had come back for a further charge from the Court, neither party had a right to ask the Court for a charge to be given them—it being too late, and a matter entirely between the Court and Jury.

To which charge, and refusals to charge, counsel for plaintiff again excepted.

Stubbs & Hill, for plaintiff in error.

Poe, Nisbet & Poe, for defendant in error.

*By the Court.*—Starnes, J., delivering the opinion.

[1.] The opinion of the Court below, seems to have been, that if Randolph Blackwell died in possession of the property, the subject of this controversy, and the defendant, as admin-

Yeldell *vs.* Shinholster.

istrator, took possession of it, and sold the same, inasmuch as he thus "discharged a duty imposed upon him by law", he was not liable, in this form of action to the plaintiff, "however good his (the plaintiff's) title might be".

In this, his Honor was certainly mistaken. An administrator is authorized, by law, to take possession, and dispose of the goods and chattels, rights and credits, &c., of *his intestate;* and he will be protected in the appropriation of them. But if he takes possession of another person's property, and sells it as the intestate's, he does it at his peril; and cannot be protected, in an action of trover brought against him.

The possession of this property by the decedent, at his death, might properly be looked to, as evidence of his title. But, of course, it could be contradicted; and, inasmuch as there was some evidence before the Jury to this effect, the Court should have charged, that "if the Jury believed the title to the property was in the plaintiff, at the time of Blackwell's death", they should find for the plaintiff.

[2.] When first requested so to charge, the Court declined, assigning as one reason, (the other reason is disposed of by what we have already said,) that "the request was made after the Court had commenced its charge", and by interruption.

It is not proper practice for counsel to interrupt the Court in his charge. But it is perfectly proper, after the Court has closed, for the counsel respectfully to call his attention to any point omitted, on which instruction from the Court to the Jury is desired, and on which it should be given. And it is the duty of the Court, in such case, to charge the Jury in relation to the same.

[3.] It would be better, in all cases, if such requests to charge, could be submitted in writing, by counsel, before the Court proceeds to charge the Jury; but in the pressure of business, this is frequently impracticable, without considerable delay; and in such event, it is proper, after the charge is closed, that the attention of the Court should be called to a point omitted.

VOL. XV. 25

[4.] The record shows, that after the Jury had retired, and, being unable at once to agree, had returned into Court for further instructions, the Court was again requested to give the instruction which had been refused; and again the request was declined.

In this the Court erred.

Let the judgment be reversed.