## KNIGHT *et al. vs.* KNIGHT *et al.*

1. If an administrator *de bonis non*, holding trust funds and securities under the will of the decedent (which created certain trusts and left the residue of his estate over) sold some of the securities and loaned the funds, taking securities in his own name, but recognizing that he held them in trust, and died intestate in possession of them, they constituted no part of the assets belonging to his estate, and his administrator, who had never been in actual possession, had no right to take charge of and administer them, and no creditor of his had any right to subject them to the payment of his demand.

2. Whether the trust as to the funds in dispute was express or implied, it seems to have been executed, and the person in whose favor it was declared being fully capable of taking and managing the property in her own right, and the legal title having merged into the equitable interest, and thus vested in her a perfect title, she may invoke the aid of a court of equity to put her in possession.

(*a.*) Wherever trust assets are misapplied and can be traced to the hands of a person affected with notice, the trust attaches, and equity will aid in restoring them to their legitimate purpose. The beneficiary of a trust may follow the funds wherever they can be traced, and has the option of affirming or rejecting an unauthorized investment by the trustee.

3. Equity has full and peculiar jurisdiction, not only to preserve a trust estate, but to prevent its diversion from the true owner, and to see that it is applied to its legitimate purposes by restraining the legal representative of a deceased trustee from taking possession of it and administering it as part of the assets of his intestate; but if this restraint will not afford ample protection to the rights of a beneficiary, then the court may go still further and take it into its custody, through a receiver, whenever there is danger of its destruction or loss, or where it is in litigation, and the rights of both parties cannot be otherwise fully protected, or where there is no one to manage it.

4. There was no abuse of discretion in granting an injunction and receiver in this case, in order to preserve the fund to its proper use pending the litigation, and to secure it for the party to whom it may be found to belong upon the final trial.

5. When the effects shall be turned over to the court, under its decretal order, if anything is found among them which does not properly pertain to the matter in dispute, then the court, by a modification of the order, if necessary, may direct its officer to deliver it to the temporary administrator.

November 17, 1885.

Administrators and Executors. Equity. Wills. Trusts and Trustees. Estates. Injunction. Receiver. Before Judge HAMMOND. Fulton County. At Chambers, July 14, 1885.

Reported in the decision.

GARTRELL & LADSON; BROYLES & JOHNSTON, for plaintiffs in error.

HOKE & BURTON SMITH; W. D. ELLIS, for defendants.

HALL, Justice.

Eugene Aubrey Knight died intestate, leaving complainant as his only heir at law. In his lifetime, he acted as executor of the will of his grandfather, Thomas Knight, Sr., and was charged by that will with the execution of certain trusts created thereby, and was the sole residuary legatee under the same. He had reduced testator's entire estate to

possession, and died without having executed the trusts of the will. His father, James A. Knigh t, succeeded him in these trusts by becoming administrator *de bonis non*, with the will annexed, of the said Thomas Knight, Sr. James A. Knight died intestate during the present year, leaving as his only heir at law, the defendant, Herbert A. Knight. Previous to his death, he obtained letters dismissory from the administration of the estate of Thomas Knight, Sr. If Eugene Aubrey did not part with his interest, the complainant is entitled to the entire residue of the estate of Thomas Knight, Sr., which consisted of certain railroad stocks, principally of ninety-two shares of the capital stock of the Central Railroad and Banking Company of Georgia, and which, together with fifteen shares of the Southwestern Railroad ι tock, specially set apart for the benefit of the four *cestuis que trust* named in the will, after the death of her husband, as she charges, went into the hands of James A. Knight, by virtue of his appointment as administrator *de bonis non*, with the will annexed, of Thomas Knight, Sr. It is further charged, that the Central Railroad stock, worth some $13,000, was sold by James A. Knight, and the proceeds arising from the sale were loaned to A. J. White, Walter A. Taylor, and others, and the securities for these loans were taken in the individual name of the said James A. Knight; that, although such was the fact, he did not claim them as his property, but always acknowledged to complainant and others that he held them in trust for her. At his death, these securities, with other papers belonging to him, were found in two tin boxes left in the room he last occupied. Complainant laid claim to them, as did also Herbert A. Knight, the only heir at law of James A. Knight, but by agreement these boxes were taken possession of jointly by these contesting claimants, and were opened, and after a partial examination of their contents, again closed up, and placed in the custody of Paul Romare, to be held by him until two of the counsel, representing each of these parties, ordered to

whom the boxes and their contents should be delivered. A further examination of the papers in the boxes was to be had, doubtless with a view to the amicable settlement of the rights of these parties. Just at this point in the negotiations, Herbert A. Knight associated other counsel with those originally retained by him, and under the advice and by the direction of the counsel last employed, he applied for and obtained the appointment of one of these counsel, Malcom Johnston, Esq., as temporary administrator on the estate of James A. Knight. This was done without notice to complainant or her counsel. The temporary administrator, upon his qualification, demanded possession of the boxes, with a view of transferring their contents to the estate of the said James A. Knight, to which he insisted they belonged. Although the consent of Mr. Ladson, the counsel who represented the defendant, Knight, was obtained, and he directed the boxes and their contents to be delivered to the temporary administrator of James A. Knight, yet Mr. Ellis, the counsel representing complainant in the arrangement touching the custody of these effects, withheld his consent, and protested against their being so delivered. Apprehending that this custodian might be induced to turn them over, to her prejudice and against her will, the complainant filed her bill to inhibit him from so doing, and obtained a temporary restraining order from the chancellor. After this, she sought and obtained letters of administration *de bonis non*, with the will annexed, on the estate of Thomas Knight, Sr., and amended the bill by making herself a party complainant in this character. There were several other amendments made to the bill, by which she sought to recover the property in dispute, and to prevent it from going into the hands of James A. Knight's administrator. The defendant, Knight, insisted that Eugene A., in his lifetime, had, for a sufficient consideration, conveyed all his interest, under the will of his grandfather, Thomas Knight, to James A. Knight.

To this it was replied that Eugene A., at the time of the making of this conveyance, was mentally incompetent to conduct such a transaction, and that James A. Knight never relied upon that deed as conveying title to him. At the hearing, there were affidavits before the chancellor directly upon the points in issue. Those introduced by complainant upon several, indeed upon most, of the points in contest, were in direct conflict with those relied on by the defendant. The chancellor ordered the injunction to issue, and appointed a receiver as prayed; and upon the qualification of the receiver, he directed Romare to deliver up the boxes and their contents, and also ordered the temporary administrator to surrender a mortgage, which by consent had been taken from one of the boxes to be recorded, and which, when so recorded, was to be returned to the agreed custodian, but which had gotten into the hands of James A. Knight's administrator. Exception was taken to this decree, and the case was brought to this court for review.

1. If the claim of the complainant be well founded, the property in dispute constituted no part of the assets belonging to the estate of James A. Knight, and his administrator never having been in actual possession, although his intestate had possession at his death, had no right to take charge of and to administer them; and no creditor of the deceased intestate had any right to subject them to the payment of his demand. *Yeldell vs. Shinholster*, 15 *Ga.*, 189, 192, **193**; *Reeves vs. Matthews*, 17 *Id.*, 449; *Cooper vs White, adm'r*, 19 *Id.*, 554. *Perkins et al., adm'rs, vs. Keith,* 33 *Id.*, 525, is directly in point; it not only affirms this principle, but holds that, although the intestate died in possession, a court of equity would restrain the administrator from controlling the property and would decree a conveyance by the trustee to the *cestui que trust.* Schouler Adm'rs, §2051; 45 Maine R., 445; Schouler, §244; 4 Mason's C. C. R., 29.

2. The trust in this case, as to the fund in dispute,

whether express or implied, seems to have been executed, and the person in whose favor it was declared, being fully capable of taking and managing the property in her own right, and the legal title having merged into the equitable interest, and thus vested in her a perfect title, she may invoke the aid of a court of equity to put her in possession. Wherever assets are misapplied and can be traced into the hands of a person affected with notice, the trust attaches, and equity will aid in restoring them to their legitimate purpose. Code, §§2314, 3152. In addition, the beneficiary of a trust may follow the funds wherever they can be traced, and has the option of affirming or rejecting an unauthorized investment by the trustee. *Id.*, §3152.

3. It thus appears that equity has full and peculiar jurisdiction, not only to preserve a trust estate, but to prevent its diversion from the true owner, and to see that it is applied to its legitimate purposes, by restraining the legal representative of a deceased trustee from taking possession of it and administering it as part of the assets of his intestate; but if this restraint will not afford ample protection to the rights of a beneficiary, then the court may go still further, and take it into custody through a receiver, whenever there is danger of its destruction or loss (Code, §3098), or when it is in litigation, and the rights of both parties cannot be otherwise fully protected, or when there is no one to manage it (*Id.*, §274), as is evidently the case here. The fund is in litigation; there is no one to manage it; and, on account of the impending insolvency of one of the principal debtors to it, there is danger of its partial loss, if not total destruction, especially in view of the protracted litigation over it that has already begun, and is likely to follow, not only with the heir of James A. Knight, but with the debtors themselves, who, in case of a suit brought by Knight's administrator, might contest his right to recover, as they have received notice of complainant's claim, which they evidently believe is well founded. They could make no such defence to a suit or demand brought

by this receiver, who is in this respect the representative of both the parties litigant.

4. We see no abuse of discretion in the chancellor's action in this case; so far as this decree goes, its only purpose is to preserve this fund to its proper use pending the litigation between these parties, and to secure it for the party to whom it may be found to belong by the final decree made in the cause.

5. When the effects shall be turned over to the court under its decretal order, if anything is found among them which does not properly pertain to the matter in dispute, then the court, by a modification of the order, if necessary, may direct its officer to deliver it to the temporary administrator. We say, if it is necessary to modify the order, advisedly, for we do not know that such will be the case, but rather think, from its carefully guarded terms, that the case was provided for at the preliminary hearing when the order was made.

Judgment affirmed.