### ARNOLD *et al. v.* LIMEBURGER.

1. Prior to the Code of 1863, the marital rights of a husband did not attach to real estate either owned by the wife at the time of the marriage or acquired by her during coverture, unless she was in possession of the same, or it was reduced to possession by the husband during coverture.
2. Even if the Code of 1863 changed the rule as to property owned at the time of the marriage, it was still necessary under that code, before his marital rights would attach, for the husband to reduce to possession property acquired by the wife during coverture.
3. The wife's possession during coverture was the possession of the husband.
4. The right acquired by a husband, under a marriage solemnized before the passage of the married woman's act of 1866, to reduce to possession property of the wife owned at the time of the marriage, or acquired during coverture prior to the passage of that act, was not affected thereby.
5. The interest of an heir at law in an undistributed estate was a mere chose in action, and the fact that a woman who was an heir at law lived with other heirs upon lands of the estate both before and after her marriage did not constitute such possession of any interest in the lands as that the marital rights of the husband would attach thereto.
6. A female who held a reversionary interest in land subject to an estate in dower, and who, both before and after her marriage, lived upon the land with the dowress, was not so in possession of the land as that the marital rights of her husband attached thereto during the existence of the dower estate, nor after the termination of that estate when the reversionary interest was not reduced to possession by him.
7. A deed by a husband, executed after the passage of the married woman's act of 1866, which purported to convey land to which he claimed his marital rights had attached before the passage of that act, is good as color of title, notwithstanding that at the time of the conveyance he had not reduced the property to possession.
8. The fraud necessary to defeat prescription is moral fraud.
9. Where one purchased property in which dower had been assigned, and obtained a conveyance signed by the dowress, by one of the heirs at law, and by the husbands of two heirs at law who claimed the right to dispose of the land in the exercise of their marital rights, the conveyance purporting to convey the fee in the property, and the purchaser resided with the dowress upon the land at the date of the deed and continued to reside thereupon after the termination of the dower estate, and the wives had notice, before the termination of the dower estate, of the existence of the conveyance by their husbands, and that the purchaser, after the death of the dowress, was claiming the exclusive ownership of the property, prescription began to run in favor of the purchaser, from the date of the death of the dowress, against whatever rights the wives may have had in the land growing out of the fail-

ure of the husbands to reduce the same to possession during coverture; and if such possession continued for seven or more years, the purchaser had a good prescriptive title against the wives and persons claiming under them, if they were laboring under no disability during that period.

10. The burden of proving disability to sue rests upon the person who alleges it; and in the absence of evidence to the contrary, it will be presumed that the person was laboring under no disability.

11. When in an action to recover land the plaintiff's evidence shows a prima facie right to recover, and the evidence of the defendant shows seven years adverse possession under color of title prior to the beginning of the suit, the burden of proving the existence of a disability to sue and its continuance for such a length of time as to defeat prescription rests upon the plaintiff.

Argued December 16, 1904. — Decided February 1, 1905.

Application for partition.　　Before Judge Mitchell.　　Lowndes superior court.　　May 20, 1904.

On May, 18, 1903,..W. F. Arnold, F. M. Parrish, and Barney Arnold filed a petition for partition against W. J. Limeburger. The property described was two lots of land. It was alleged that W. F. Arnold was the owner of a 7/8 of 1/4 undivided interest, F. M. Parrish the owner of a 1/4 undivided interest, and Barney Arnold the owner of a 1/8 of 1/4 undivided interest, and that the defendant was the owner of the remaining 1/2 undivided interest. Notice of intention to apply for partition had been served on the 25th day of April. The defendant filed an answer, in which he denied that the plaintiffs had any interest in the land, and alleged that he was the sole owner of the same. The answer did not set forth upon what this claim of sole ownership was based; but there was no demurrer. At the trial the undisputed facts were as follows: Joshua Limeburger died in possession of the land in controversy, May 13, 1848. He left surviving him a widow, Salomy Limeburger, and seven children, to wit: Washington, the defendant, Woodbury, Louvinia, Seletie, Marion, Jasper, and Newton. The land was assigned to the widow, about 1850, as dower, the record not disclosing the exact date. Louvinia married Arnold in 1849, but it does not appear distinctly whether the marriage took place before or after dower was assigned. Seletie married Parrish in 1857. At the date of these marriages these two daughters were living with their mother on the land in controversy. Mrs. Arnold, after her marriage, moved away from the place in 1850 or 1851, and never afterwards lived on the land. Mrs. Parrish moved away from the

place in 1858, but returned and lived with her mother from 1862 to 1865; her husband, after his return from the army, living on the place with her during the latter part of the year last mentioned. Jasper, Newton, and Marion died during the Civil War in 1862, 1863, and 1864, respectively, without issue. On April 1, 1871, C. W. Arnold, the husband of Louvinia, and Wiley Parrish, the husband of Seletie, Woodbury Limeburger, and Salomy, widow of Joshua Limeburger, joined in a deed conveying the land in fee simple to W. J. Limeburger, the defendant, for an expressed consideration of $1,800. At the time this deed was executed the defendant was living upon the land with his mother, the tenant in dower, and he has continuously lived upon the land from that date until the present time. Mrs. Arnold and Mrs. Parrish were not parties to this deed, but it appears that they knew of the execution of the deed either at the time or shortly thereafter. The widow of Joshua Limeburger died on December 31, 1886. Mrs. Arnold died September 1, 1888, and Mrs. Parrish is still living  Arnold is dead, but the record does not disclose the date of his death. The case was presented upon the theory that he died before his wife. Mrs. Arnold left surviving her eight children, and seven are still in life, the plaintiffs W. F. and Barney Arnold being among the number. Barney Arnold claims a 1/8 interest in the property as an heir of his mother. W. F. Arnold claims a 7/8 interest, 1/8 as an heir of his mother, 5/8 under conveyances from other children, and 1/8 under a conveyance from James M. Dees and others, who are the children of a deceased daughter of Mrs. Arnold. It appears that Mrs. Dees was the oldest child, but it does not appear when she was born or when she died. One of the Dees children is about 22 years old, another about 24, and the third about 26, one witness stating that each of the three children has been 21 some time. F. M. Parrish claims under a deed from Mrs. Parrish. The deeds under which W. F. Arnold and F. M. Parrish claim were all executed in 1903. The court directed a verdict for the defendant, and the plaintiffs excepted.

*G. A. Whitaker,* for plaintiffs.
*W. H. Griffin* and *Wilcox & Johnson,* for defendant.

COBB, J. 1–6. The land in controversy was a part of the estate of the father of Mrs. Arnold and Mrs. Parrish. Their hus-

bands had no interest therein except such as they acquired by virtue of their marital rights. The contest is between those claiming under the husbands and those claiming under the wives. The death of the father and the consummation of the marriages occurred before the code was adopted. Upon the death of the father each of the daughters became entitled to a one-seventh interest in his estate. Upon the death of the three brothers each of them became entitled to a further interest in the property as heirs of their brothers. As one of the brothers died before the code was adopted and the other two after, the case, so far as it relates to the interest acquired from the father and one of the brothers, is to be determined by the law as it existed prior to the adoption of the code, and, as to the interest acquired from the other two brothers, as laid down in the code. Prior to the adoption of the code, the law of Georgia was, that, so far as the marital rights of a husband were concerned, realty and personalty were upon the same footing, and that title to property of either class which was in possession of the wife at the time of the marriage immediately vested in the husband; but if the wife was not in possession, the marital rights of the husband did not attach, as against the wife's right of survivorship and as against her heirs in case of her death, unless the husband had reduced the property to possession during his lifetime if she survived him, and during her lifetime if he survived her. Under the Code of 1863, it seems that real estate owned by the wife at the time of the marriage vested immediately in the husband without reference to possession, but property acquired by the wife during coverture did not vest in the husband until reduced to possession by him. Code of of 1863, §§ 1701, 1702. It has been held that the husband's right to reduce to possession the property of the wife which had been acquired by her prior to 1866 was not affected by the passage of the married woman's act of that year, and that this right might be exercised thereafter. *Archer* v. *Guill*, 67 *Ga.* 197; *Grote* v. *Pace*, 71 *Ga.* 231 (2); *DeVaughn* v. *McLeroy*, 82 *Ga.* 687 (5). It will therefore be seen that to determine the question whether the husbands had a right to convey the property in 1871 depended upon whether they had reduced to possession the interests of their wives in the property which they attempted to convey; the old law in reference to real estate owned by the wife

at the time of the marriage, and the code in reference to property acquired during coverture, each providing that the husband's right to convey the wife's property was dependent upon whether he had reduced it to possession. If the wife at the time of the marriage was in possession of the property, or if she acquired possession at any time during coverture, or if property which was acquired during coverture came into her possession, or property of either class came during coverture into the possession of the husband, then the same was reduced to possession within the meaning of the law, and the husband had a right to convey it. Both Mrs. Arnold and Mrs. Parrish were prior to their marriages actually upon the land, living with their mother, between the time of the death of their father and the time that dower was set apart; but this did not in law place them in possession of any interest in the land, their interest being simply a share in an undistributed estate. *Hooper* v. *Howell,* 50 *Ga.* 165; *Sterling* v. *Sims,* 72 *Ga.* 51. After the dower was set apart they were also upon the land, living with their mother; but they were not then in possession of any interest in the land, because the possession was in the mother as tenant in dower, and their actual presence upon the land would not put them in possession of the reversion, which could be reduced to possession only after the termination of the dower estate. So that under no view of the case could their presence upon the land, either before or after dower was set apart, be treated in law as a possession of any interest in the land. If the reversion had been sold during the existence of the dower estate, the right to the proceeds of the sale would have been a chose in action surviving to the wife, in the event her husband died before reducing the proceeds to possession. *Sterling* v. *Sims,* 72 *Ga.* 51. The widow of Joshua Limeburger did not die until 1886, and the right of the daughters to take possession of their interest in the land did not accrue until that date. The record not disclosing anything which would establish a possession by the wives at the time of their marriages, or a possession acquired during coverture, the husbands had no right to convey the land in right of their wives in 1871, when the deed relied upon by the defendant was executed. *Hudgins* v. *Chupp,* 103 *Ga.* 484. In the elaborate opinion by Mr. Justice Little in the case just cited there will be found many of the cases decided by this court re-

lating to this subject. In addition to those cases see *Sayre* v. *Flournoy*, 3 *Ga.* 541; *Rogers* v. *Cunningham*, 51 *Ga.* 40. In *Smith* v. *Atwood*, 14 *Ga.* 402 (7), the court seems to have overlooked the act of 1785, which declared that the husband's marital rights should attach to land only under the same circumstances as they would attach to personal property, that is, only in the event the husband reduced the land to possession.

7–9. The defendant claims that even if he acquired no title under the deed of 1871, that deed is good as color of title; and that, having been in possession for seven years thereunder, he has a perfect prescriptive title. While the deed was executed in 1871, the prescription would not commence to run until December 31, 1886, when the tenant in dower died. See Buswell on Lim. and Adv. Pos. § 273. The defendant was in possession with his mother at the time the deed was made. He acquired under that deed the dower estate; and having remained in possession after the death of his mother, claiming under the deed of 1871, of which Mrs. Parrish and Mrs. Arnold had notice, this was sufficient to put them on notice that he was asserting an adverse claim against them, and although they were cotenants from the date of their mother's death, he was in adverse possession of the land. There is nothing in the record to authorize an inference that there was any fraud connected with the transaction resulting in the deed of 1871. The fraud required to defeat prescription is moral fraud ( *Street* v. *Collier*, 118 *Ga.* 470 (5)); and there is no suggestion in the record of fraud of this character. At the date the suit was brought the defendant had been in possession for more than seven years after the death of his mother, and therefore prescription had ripened in his favor against all persons claiming under his two sisters who were not laboring under a disability to sue. It is clear, therefore, that the defendant has a good prescriptive title as against all the interests in the land claimed by the plaintiffs, unless the interest of the Dees children is saved by their disability.

10–11. The widow of Joshua Limeburger died in 1886, and Mrs. Arnold died in 1888. Consequently at the time of Mrs. Arnold's death prescription had run against her for about two years. The Civil Code, § 3780, provides that if disability to sue arises after the right of action accrues, and is not voluntary on the

part of the person claiming it, the limitation shall cease to operate during its continuance.    While this section is in the article relating to limitations of actions on contracts, it has been applied to an action for land; and it has been held that after prescription began to run against a feme sole, her voluntary marriage would not exempt her from the operation of the statute.    *Sparks* v. *Roberts*, 65 *Ga.* 571.    The general rule seems to be that when prescription once begins to run against a person, his subsequent disability will not suspend or defeat the prescription.    19 Am. & Eng. Enc. Law (2d ed.), 224 et seq.    There are some rulings, that where prescription has once begun to run, and before the period of prescription is complete the estate is cast upon an infant, the disability of the infant will suspend the prescription; but the weight of authority seems to be against this view.    See Buswell on Lim. and Adv. Pos. § 108 (n. 2).    Mrs. Arnold at no time labored under a disability, and the prescription began to run against her.    If the minority of her heirs did not suspend or defeat the prescription, then the prescriptive title of the defendant became perfect upon the expiration of seven years from the date of the death of the tenant in dower.    If the general rule above referred to is still the law of this State, then the only change made by the section of the code above cited is to suspend the prescription in favor of one whose disability is not "voluntarily caused or undertaken," and it would seem that the disability referred to in this section would be the disability of a person against whom prescription has once begun to run, and not the disability of a successor.    However, upon this question we now make no authoritative ruling; as, under the view of the case which will now be presented, the direction of a verdict for the defendant was proper.

It does not appear when Mrs. Dees was born or when she died. The two years which elapsed between Mrs. Limeburger's death and that of Mrs. Arnold would in any event count against Mrs. Dees and those claiming under her.    Hence, if Mrs. Dees before her death was sui juris for a time which, added to the period just above mentioned, would make the seven years prescription, then her children would be barred of a recovery, and the defendant would acquire a good title as against them and those claiming under them.    Or, if the Dees children were laboring under no dis-

ability for a time which, added to the two years and whatever time elapsed between Mrs. Arnold's death and that of Mrs. Dees (assuming the latter to have been sui juris), would make the seven years prescription, then the children would also be barred. There is no evidence in the record from which this matter can be definitely determined. The case, therefore, turns on the question upon whom the burden of proof rested. It has been held that where a party relies on prescription, he must show that the land was owned for the requisite period by persons free from legal disability. City of Austin v. Hall, 93 Tex. 591 See also Saunders v. Simpson, 97 Tenn. 382. On the other hand, it has been held that the burden is on the party relying upon disability to prove it; and that where there is no evidence on the subject, absence of disability will be presumed. Palmer v. Wright, 58 Ind. 486; Fankboner v. Corder, 127 Ind. 164. See also 22 Am. & Eng. Enc. Law (2d ed.), 1212. Proof of paper title to land makes out a prima facie case for the plaintiff. Proof by the defendant of adverse possession for seven years in good faith under color of title rebuts this prima facie case. If the plaintiff belongs to a class against which prescription would not run for the time in question, it is incumbent upon him to prove it. The general rule is that seven years adverse possession under color perfects the title. The exception is as to persons laboring under a disability for some reason to sue for and recover the land during the seven years. The defendant makes out his defense by proving the general rule, and the burden is upon the plaintiff to prove that he is within the exception. No exception is to be presumed. It must be shown by affirmative proof. This is, in our opinion, the correct rule. Applying it to the present case, it will be presumed that Mrs. Dees was laboring under no disability in her lifetime. But there is no presumption as to how long she lived, or that she lived a sufficient length of time after her mother's death for prescription to ripen against her. The plaintiffs relied on disability. They should therefore have shown either that Mrs. Dees was within some of the exceptions, or that she died before prescription ripened, and that her children have not been of age a sufficient length of time since her death for prescription to ripen against them. Having failed to offer such proof, the case fails as to the interest of the Dees children, as well as to the interests of Mrs.

Parrish and the children of Mrs. Arnold, who conveyed their interests to the plaintiff W. F. Arnold. The plaintiffs' right to recover depended on the strength of their own title; and having failed to introduce sufficient evidence to overcome the case made out by the defendant, there was no error in directing a verdict in favor of the defendant.

> *Judgment affirmed.	All the Justices concur.* -