GARNER, administrator, *v.* LANKFORD, administrator.

1. Under the law existing in this State in 1859, where a married woman received a gift of money, and the donor in making the gift employed language showing an intention that it should be for the separate use of the donee, and after receiving the money the wife turned it over to her husband, who by investment in other property mingled it with his individual estate, the property became a separate estate for the use of the wife with legal title vested in the husband under an implied trust.

2. Where, after receiving money under circumstances as indicated in the preceding note, the husband, notwithstanding his manner of investment, recognized the fund as a trust for his wife so long as she lived, and after her death for the use of her heirs at law so long as he lived, the statute of limitations as against a demand for an accounting would not be applicable. But after the death of the husband and administration upon his estate, there would be a change in respect to the trust estate; and the administrator upon the estate of the husband having undertaken to administer all the property left by his intestate, the statute of limitations would begin to run in favor of the administrator at the expiration of one year from the date of administration, and a suit for an accounting commenced against the administrator more than ten years thereafter would be barred.

AUGUST 31, 1917.

Equitable petition. Before Judge Brand. Gwinnett superior court. June 30, 1916.

The exception is to a judgment dismissing the case on demurrer. It appears from the allegations in the petition that George Minor was twice married, and died leaving surviving him his second wife and two sets of children, the issue of his respective marriages. The estate left by him was duly administered, in the course of which a statutory year's support was set apart to the widow and certain land was set apart to the widow as dower; and such property as remained was distributed among the several heirs at law. One of the administrators died, and the other survived the widow; but the estate having been administered, except the remainder

after termination of the dower interest set apart to the widow, there was nothing for the surviving administrator to do until after the death of the widow. The widow remained in possession, and resided on the land set apart as dower until she died. Immediately thereafter the surviving administrator above mentioned sold the land, thereby converting it into money. The first set of children asserted against the estate a money demand for payment out of the fund, on account of certain money which was given to their mother by her father during her coverture, and was turned over by her to her husband, George Minor, the intestate. The second set of children objected to the allowance of the demand, and the administrator thereupon declined to make payment. Suit was instituted against the administrator by the first set of children, to recover the amount. Subsequently the petition was so amended, by consent, as to strike the names of the original plaintiffs, and substitute for them, as sole party plaintiff, the administrator upon the estate of their deceased mother. The petition was several times amended; and in addition to that which is stated above, the following was alleged in substance: The plaintiff's intestate, the mother of the first set of children, was Nancy Veal Minor. In 1859 her father, William Veal, gave and delivered to her the sum of $600, stating at the time of the gift that "it was to remain her property, and not to become the property of her husband, said George Minor, by possession or otherwise." Upon receiving the money, Nancy Veal Minor "in turn handed the same to her said husband, said George Minor." After thus acquiring possession of the money, George Minor "invested the said money in land or other profitable investment or investments, and .. . said money went into his estate . . as a trust fund of the said Nancy Veal Minor, . . and not as the money of said George Minor, . . and was so recognized and treated." George Minor recognized the money as a trust fund for Nancy Veal Minor so long as she lived, and after her death he recognized it, so long as he lived, as a trust fund for her heirs, and after his death the money was recognized as a trust fund by the administrators upon the estate of George Minor, who declared that the plaintiff's demand would have been paid except for the fact that there was no money with which to pay, after setting apart the year's support to the widow, and paying certain moneys to the second set of children to equal the

amount paid to the first set; and for the further reason that the first set of children, being assured by the administrator that he would continue to recognize the trust, did not wish to deprive the widow and her minor children. The first wife died in 1863. George Minor died in 1878; and the second wife in 1912. Suit was instituted in 1915, seeking to recover the principal sum of $600, with interest thereon from January 1, 1860. The demurrer was upon the grounds, among others, that no cause of action was set forth, and that, if any cause of action ever existed, it appeared from the face of the petition to be barred by the statute of limitations.

*R. N. Holt* and *Gober & Jackson,* for plaintiff.

*I. L. Oakes* and *O. A. Nix,* for defendant.

ATKINSON, J. 1. Prior to the married woman's act of 1866 (Acts 1866, p. 146), property given to the wife during coverture, or acquired by her, would ordinarily vest in the husband. *De-Vaughn* v. *McLeroy,* 82 *Ga.* 687 (10 S. E. 211); *Hudgins* v. *Chupp,* 103 *Ga.* 484 (30 S. E. 301); *Arnold* v. *Limeburger,* 122 *Ga.* 72 (49 S. E. 812). But any words in the gift or bequest indicating a wish for the personal enjoyment by the wife, such as a gift to the wife by name, would create a separate estate therein for her. Code of 1863, § 1702; *Whitten* v. *Jenkins,* 34 *Ga.* 298; *Fears* v. *Brooks,* 12 *Ga.* 195; *McQueen* v. *Fletcher,* 77 *Ga.* 444; *Barber* v. *Barber,* 125 *Ga.* 226 (53 S. E. 1017); *Endsley* v. *Taylor,* 143 *Ga.* 607 (85 S. E. 852). If no trustee were appointed, the law as pronounced in the authorities cited, while vesting the legal title in the husband, would imply a trust in favor of the wife and treat the husband as trustee for her. It was alleged that the gift in question was made in 1859, which was a date preceding the adoption of the Code of 1863 and subsequent to the rendition of several of the decisions cited above; and it was alleged that the donor, in making the gift to his daughter, stated that the money "was to remain her property, and not to become the property of her husband, said George Minor, by possession or otherwise," and that upon receiving the money the donee "in turn handed the same to her said husband," who by investment mingled it with his own property. Under application of the principles stated above, this sufficiently alleges the creation of a separate estate for the wife,

with legal title vested in her husband holding as trustee under an implied trust.

2. The action was instituted in 1915, against an administrator appointed in 1878, seeking an accounting for certain money which the administrator's intestate had received under an implied trust in 1859, and mingled with his personal estate. There was no effort to trace the fund into any particular property. The question of bar by the statute of limitations being properly raised by demurrer, it becomes material to consider whether the statute of limitations was applicable; and if ever, when did it begin to apply. It is declared in the Civil Code, § 3782: "Subsisting trusts, cognizable only in a court of equity, are not within the ordinary statutes of limitation; but in all cases equity will consider the lapse of time in decreeing an account, and where, from it and other circumstances, it would be inequitable, any relief will be refused." The principle thus expressed has been frequently applied. *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113), was an action for an accounting, based on a transaction in which the plaintiff entrusted the defendant with the absolute control and management of certain moneys, upon his statement that he would take the money and loan it at a good rate of interest, and render a just and true account when called upon. It was contended, among other things, that the action was barred by the statute of limitations. On this subject the court announced the following rule: "The statute of limitations does not begin to run in favor of one occupying towards another the position of a continuing and confidential agent for the purpose of collecting, investing, and taking care of funds of the latter, his duties as to the same being, in substance, those of a steward or factor, and running on from year to year, until such agent has rendered an account, accompanied by an offer to settle, or there has been by the principal a demand for a settlement and a refusal to pay by the agent, or there has been an express repudiation of the agency, or until there has been such a change in the relations of the parties as would warrant the inference that the confidential agency had in fact ceased. In the latter event the law would presume a demand after the lapse of a reasonable time, and from such time the statute would begin to run." The same principle was applied in *Rucker* v. *Maddox,* 114 *Ga.* 899 (41 S. E. 68), an action for an accounting, based on a transaction

between a married woman and her husband, whereby the former delivered to the latter certain money to be managed for her benefit. In dealing with the question of the applicability of the statute of limitations, it was held: "Where a wife places a fund in the hands of her husband, under an agreement that he is to use and improve same for her benefit, with no time fixed for an accounting and settlement between them, the statute of limitations does not begin to run against her and in his favor until after a demand for a settlement and a refusal by him to pay." In both of these cases there was an express agreement as to the fiduciary relation, in advance. The later case of *Barber* v. *Barber,* 125 *Ga.* 226 (53 S. E. 1017), however, was another case for an accounting, in which there was no express agreement as to a fiduciary relation, but the husband merely received the property of his wife in 1863 under circumstances which would imply a trust in favor of his wife, and after receiving it mingled some of the personal property with his individual estate, and later, at a time subsequent to the passage of the married woman's act of 1866, turned back so much of the property to his wife as remained in his custody. In dealing with the question of bar by the statute of limitations, it was held: "As long as the husband is in possession of the property, using it for the wife's benefit and recognizing her ownership, no lapse of time will bar the wife from asserting her title or calling the husband to an accounting. The statute of limitations does not run against the right of the wife to call for an accounting, until there has been an account rendered, accompanied by an offer to settle, a refusal upon demand to settle, a notice of adverse claim, an express repudiation of the fiduciary relation, such a change of circumstances of the parties as would be reasonably calculated to put the wife on notice that the relation was no longer recognized, or something to indicate to a reasonably prudent person that the relation has ceased. A surrender by the husband of a portion of the property of the wife which had been received by him, being all that was then in his possession, a failure to account for the balance, and an abandonment of all further control or management of the property, would be sufficient to indicate that the husband treated the fiduciary relation as at an end; and the statute would begin to run in his favor after the lapse of a reasonable time from such an event." It will be observed that the controlling fact advanced as delaying the

time for application of the statute of limitations was possession of the property by the husband, attended by his continuous recognition and declaration of the trust. The fact that the trust had become executed by the passage of the married woman's act of 1866 was evidently not regarded as affecting the question. It seems that the court was of the opinion, that, in the case of an implied trust, the person holding the property in trust could never, while flying colors indicating a trust, claim the advantage of the statute of limitations as a bar to an action for accounting; but that upon a change of condition that would show an adverse holding, the statute would commence to apply. The powers of an administrator are purely statutory (Civil Code, §§ 3933, 3934), and do not extend to the execution of a personal trust devolving upon his intestate. *Knight* v. *Knight,* 75 *Ga.* 386. It follows that any act or representation by an administrator, acknowledging the existence of such a trust, or setting forth reasons for delaying payment to those entitled to trust funds which had been held by his intestate, would not affect the character or continuance of the trust. Applying the foregoing to the case in hand, George Minor having received the money under circumstances that would imply a trust and so long as he lived having recognized and declared a continuance of the trust, first, for his wife Nancy Veal Minor until her death, and after her death for her heirs at law, the statute of limitations did not begin to run while he lived; but after his death, when his estate became subject to administration, as the administrator could not execute or continue the trust, a cause of action for accounting would then have accrued, and from that time the statute of limitations would apply. The administrator would be entitled to one year's exemption from suit, from the date of administration (Civil Code, § 4015), to which should be added ten years, the statutory period applicable in such case. Civil Code, § 4366; *Thornton* v. *Jackson,* 129 *Ga.* 700 (59 S. E. 905). The administration having commenced in 1878, and the suit not having been filed until 1915, the action was barred.

<div align="center">

*Judgment affirmed. All the Justices concur.*