## PICKENS, administratrix, *v.* JACKSON.

ATKINSON, J.   1.   The allegations of the petition show that the action is a suit by a principal against his agent, to enforce an implied or resulting trust, for an accounting, and for injunction, and are sufficient to allege a cause of action.

2. In a suit for an accounting as mentioned in the preceding note, the statute of limitations does not begin to run until the agent has rendered an account accompanied by an offer to settle, or there has been by the principal a demand for settlement and a refusal by the agent to pay, or there has been an express repudiation of the agency, or until there has been such a change in the relations of the parties as would warrant the inference that the confidential agency had in fact ceased. *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113); *Garner* v. *Lankford,* 147 *Ga.* 235 (93 S. E. 411); *Ramsey* v. *Street,* 150 *Ga.* 539 (104 S. E. 222). Applying the rule above announced to the allegations of the present petition, it was not open to demurrer alleging that plaintiff's cause of action, or any portion thereof, was barred by the statute of limitations, or that the same had become stale.

3. The petition does not seek to cancel any of the deeds nor to set aside either of the judgments of the court of ordinary, but prays for a decree of a court of equity giving to the petitioner the benefit of all of the deeds and judgments, and requiring an accounting of the defendant. The petition therefore was not subject to demurrer on the ground that the grantees in the deeds were not made parties, and that the petition as amended " collaterally attacks judgments and sales apparently regular in all other respects."

4. The petitioner does not seek rescission of the sales of land in part or as a whole, and therefore the petition was not subject to demurrer on the ground that " the petition seeks to ratify in part and reject in part, while rescission without restitution cannot be accomplished; that said petition fails to attack the validity of the administrator's deed to T. M. Mann, and fails to allege that the defendant has any part of the purchase-price of $10,300 therein recited, and fails to tender back to the said purchaser the price of $10,300; that said Mann is not a party to said suit, and so long as the administrator's deed to him stands said transaction cannot be enquired into."

5. For the reasons set forth in the second headnote the cause of action was not barred by laches during the life of the testatrix, and the suit is based upon a chose in action which survived to her legal representative.

6. Properly construed the petition alleged that the defendant, Jackson, procured the services of T. M. Mann to be a " by-bidder " at the sale of the land by the administratrix, ostensibly, and as represented by Jackson, that Mann was bidding in the interest of the estate, but he was in fact acting in collusion with Jackson, in the interest of the latter, whose plan was to absorb the estate himself. Therefore the petition is not demurrable on the ground that it alleges " that T. M. Mann, in the event the property was not bringing its full value, . . could bid in the same as if purchasing for himself, but his bid 'would be for the estate," while in paragraph five of the plaintiff's amendment she alleges that " T. M. Mann was the agent and servant of J. B. Jackson, and that this bid was intended for J. B. Jackson."

7. The allegation in the amendment to the petition, that the testatrix was

"old, illiterate, without business experience, and easily imposed upon," was not subject to demurrer on the ground that "the petition sets forth a new cause of action in alleging that Mrs. McCravey was mentally incompetent to manage her property; that the allegations as to said incompetency are, besides, too general, vague, and indefinite."

8. A petition that seeks a final accounting between the legal representative of a principal and the agent of the latter, and which contains a prayer that such agent be required, by decree of court, "to turn over to the petitioner the balance of the land unsold by such agent," does not render the suit one respecting title to land, and the decree prayed may be had in a court of equity in a county other than that in which the land lies. *Williams* v. *Lancaster*, 113 *Ga.* 1020 (7) (39 S. E. 471).

9. An amendment to the petition, which does not add a new and distinct cause of action, or new and distinct parties, is not demurrable on the ground that it "adds additional prayers praying for new and different relief," if such prayers are consistent with the nature of the case made by the petition. This ground of the demurrer should have been overruled.

10. In so far as any of the grounds of special demurrer not specifically dealt with above were not met by appropriate amendment, they were without merit under application of principles above announced. It follows that the court erred in sustaining the demurrers and in dismissing the petition.          *Judgment reversed. All the Justices concur.*

No. 2351. SEPTEMBER 24, 1921.

Equitable petition. Before Judge George L. Bell. Fulton superior court. November 1, 1920.

A. P. McCravey died intestate, owning a farm containing 179½ acres, called Turner's peach orchard farm, in Cobb County. The farm was encumbered by a deed to Marietta Trust & Banking Company, securing a debt on which there was a balance due of seven thousand dollars. Jane McCravey, widow and sole heir at law of the deceased, was appointed administratrix upon the estate, February 2, 1912. Shortly thereafter the administratrix procured from the ordinary of Cobb County an order to sell the farm for the purpose of paying off the debt and realizing for herself a balance over and above the encumbrance. The lands were duly advertised and sold on the first Tuesday in September, 1913. Subsequently Jane McCravey died December 10, 1919, leaving a will in which J. B. Jackson was nominated as executor. Jackson refused to probate the will, and on application of Martha C. Pickens the will was probated in solemn form, February 1, 1918, and Martha C. Pickens became administratrix with the will annexed.

Prior to and until the death of A. P. McCravey, J. B. Jack-

son was general agent and attorney at law for McCravey, and had in charge and control for him the lands above mentioned and the renting and selling of said lands. Jane McCravey, being old, illiterate, without business experience, and easily imposed upon, became administratrix at the suggestion and by the assistance of Jackson, who also procured for her the order to sell the land, and represented the administratrix in conducting the sale. To that end Jackson procured the services of T. M. Mann, and on the day of the sale went with him to bid on the property. Mrs. McCravey remained away from the sale. Mann was to be a " by-bidder," so that in the event the property did not bring its full value Mann could bid in the same as if purchasing for himself (but his bid would be for the estate) ; and it was represented by Jackson that Mann was bidding in the interest of the estate, but in fact he was acting in collusion with Jackson, in the interest of the latter, whose plan was to absorb the estate himself. Under such circumstances Mann bid $10,300, the property being worth twice that sum, and it was knocked off to him. In pursuance of such sale Jane McCravey, administratrix, signed a deed to Mann, without any consideration being paid therefor by either Jackson or Mann, the deed being thus made at the instance and suggestion of Jackson. Neither Jackson nor Mann ever paid any of their own money for the land. The encumbrances thereon were paid off from the proceeds of sale of portions of the land, as will be hereafter stated. In order to discharge $3500 of the debt due Marietta Trust & Banking Co., that company consented to release a certain part of the land covered by its deed, to enable Mann to obtain a loan for such amount from the John Hancock Mutual Life Insurance Co.; and accordingly, at the instigation of Jackson, Mann, on December 4, 1913, executed a deed to such part of the land to the insurance company as security for a loan of the above amount, which was applied to the reduction of the debt to Marietta Trust & Banking Co. On July 29, 1914, after the execution of said deed, Jackson required Mann to execute to him a deed to the balance of the land, which deed was withheld from record until July 24, 1917, in order to enable Jackson to conceal his interest and at the same time pay off the indebtedness. To that end, on April 20, 1915, Mann executed another deed to Jackson for a part of the property described in the deed

next above mentioned, naming a consideration of $1750, which was recorded on May 10, 1915, and Jackson on the same day executed a deed conveying the same land to T. J. Eubanks for the consideration of $5250, Eubanks, as a part of the consideration, assuming payment of the loan of $3500 in favor of the John Hancock Mutual Life Insurance Company. On July 28, 1916, Jackson executed a deed to B. T. Frey, conveying a portion of the land for a consideration of $3000, which money was applied on the remaining $3500 due Marietta Trust & Banking Co.

In addition to the above, Mann and Jackson sold certain personalty to Mrs. Christian for $1250. On December 8, 1913, Jackson and Mann executed a security deed on some of the property to Marietta Trust & Banking Co., for $2900; and Jackson borrowed $1000 on the land from J. H. Patton. After the deed from Mann to Jackson was placed on record, Jackson borrowed from McGarity $1500 on a part of the land which was still unsold.

On May 6, 1920, Martha C. Pickens, as administratrix of the estate of Jane McCravey, instituted an action against Jackson, and in the petition as amended she alleged in substance all that is stated above. She further charges therein, that while Jackson has tried to manipulate said lands in such way as to destroy his identity through Mann, his agent, his acts in fraud of his principal create a trust in favor of said estate (the estate of Jane McCravey, deceased); that said estate is entitled to the benefit of all the trades made by Jackson, and is the owner of the overplus over and above what it took to pay off said debt of the Marietta Trust & Banking Company and the remaining land unsold, namely 61 acres of said McCravey farm, which is fully described; that Jackson is a naked trustee holding for the benefit of the estate and all those interested in the estate; that in relation to the estate his agency and his fraudulent acts estop him from claiming the remaining lands and the overplus of money received from the sale of the lands after paying off $7000 to the Marietta Trust & Banking Company; that no settlement was ever made between Mrs. Jane McCravey and her agent, Jackson, during the life of Mrs. McCravey, nor did she know the condition of her own affairs, but she trusted all to Jackson. The prayers were that the defendant be permanently enjoined from selling or further encumbering the land; that the plaintiff have verdict and judgment for

a stated amount against the defendant; and that a decree be entered, requiring the defendant to turn over to her the balance of the land; that defendant be required to account; that a trust be decreed in favor of the plaintiff; and for general relief. The defendant demurred generally and specially. Each and every ground of the demurrers were sustained, and the petition dismissed. The plaintiff excepted.

*H. B. Moss* and *B. T. Frey,* for plaintiff.

*Robert C. & Philip H. Alston,* for defendant.